# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
### EL DORADO DIVISION

| | |
|---|---|
| JACQUELINE MANZANO, ALTON GRISHAM, and PETE TORREZ, <br><br> Plaintiffs, <br><br> v. <br><br> CREDIT ONE BANK, N.A, RESURGENT CAPITAL SERVICES, LP, and LVNV FUNDING, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br> **CIVIL ACTION NO. 3:25-cv-03072** |

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY

Samuel A. Morris, Esq. (AR No. 2021089)
BURR & FORMAN LLP

Attorney for Defendants
CREDIT ONE BANK, N.A., LVNV FUNDING LLC, AND RESURGENT CAPITAL SERVICES L.P.

222 Second Avenue South, Suite 2000
Nashville, TN 37201
Telephone: (615) 724-3258
Facsimile: (615) 724-3358
Email: smorris@burr.com

64044950 v1

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................2

    A.    Plaintiffs' Underlying Credit Card Accounts................................................2

        1.    The Manzano Account. .......................................................................2

        2.    The Grisham Account. ........................................................................3

        3.    The Torrez Account. ..........................................................................3

    B.    The Arbitration Agreement. .........................................................................4

    C.    Sale of the Accounts.....................................................................................6

III. ARGUMENT ......................................................................................................7

    A.    The Arbitration Agreement Is Covered by the FAA.....................................8

    B.    Arbitration Agreements Are Favored and Presumptively Valid.................11

    C.    The Arbitration Agreement Is Enforceable Under the FAA.......................12

        1.    Each Plaintiff entered into a valid, written agreement to arbitrate. .........12

        2.    The Arbitration Agreement covers Plaintiffs' claims.............................15

    D.    LVNV and Resurgent Are Entitled to Enforce the Arbitration Agreement....................................................................................................19

        1.    LVNV may enforce the Arbitration Agreement as an assignee. .............20

        2.    Resurgent is also entitled to enforce the Arbitration Agreement.............23

    E.    Issues of Arbitrability, Including Whether LVNV and Resurgent May Enforce the Arbitration Agreements, Are Reserved for the Arbitrator................29

    F.  Plaintiffs' Claims Must Proceed to Arbitration on an Individual Basis. .......33

    G.    This Action Should Be Stayed. ...................................................................34

IV. CONCLUSION..................................................................................................35

Defendants Credit One Bank, N.A. ("COB"), Resurgent Capital Services L.P. ("Resurgent"), and LVNV Funding LLC ("LVNV") (collectively, "Defendants"), by and through their undersigned counsel, hereby file this Memorandum of Law in support of their Motion to Compel Arbitration and to Stay the claims asserted by Plaintiffs Jacqueline Manzano ("Manzano"), Alton Grisham ("Grisham"), and Pete Torrez ("Torrez") (collectively, "Plaintiffs"), stating as follows:

## I. **INTRODUCTION**

Plaintiffs' claims arise out of allegations that Defendants improperly attempted to collect debts associated with Plaintiffs' respective COB credit card accounts. However, the Card Agreements governing Plaintiffs' accounts each contain an identical, binding arbitration provision that requires the arbitration of "any controversies or disputes arising from or relating in any way to your Account; any transactions involving your Account; any disclosures made to you concerning your Account; any interest, charges, or fees assessed on your Account; any service(s) or programs related to your Account; and . . . any collection of debt related to your Account." The arbitration provision further provides that "[c]laims in arbitration will proceed on an INDIVIDUAL basis only."

Thus, Plaintiffs' claims fall squarely within the provision's scope, and must be resolved in arbitration on an individual basis rather than before this Court. Even if this were not so, the arbitration provision commits questions as to its validity,

enforceability, coverage, meaning, or scope to the arbitrator. Accordingly, the Court should compel Plaintiffs' claims to individualized arbitration and stay these proceedings pending the outcome of arbitration.

## II. FACTUAL BACKGROUND

### A.    Plaintiffs' Underlying Credit Card Accounts.

#### 1.    The Manzano Account.

On or about February 18, 2024, Manzano opened a COB credit card account bearing an account number ending in -2393 (the "Manzano Account"). (*See* Declaration of Michael Wiese (hereinafter "Wiese Dec."), attached hereto as Exhibit A, at ¶ 5.) The credit card for the Manzano Account was mailed to Manzano at the address provided on Manzano's credit application. (*Id.* ¶ 5.) Enclosed with the credit card was a copy of the credit card agreement governing the Manzano Account (the "Manzano Card Agreement"). (*Id.* ¶ 5 and Exhibit 1 thereto.) There is no record of the Manzano Card Agreement having been returned to COB as undeliverable. (Wiese Dec. ¶ 6.)

The Manzano Card Agreement provides that it is accepted "when [Manzano] use[s] the [Manzano] Account." (Ex. 1 to Wiese Dec., p. 2 ("**Accepting this Agreement**").) Manzano used her COB credit card to make purchases, as evidenced by the billing statements and the balance maintained on the Manzano Account. (Wiese Dec. ¶ 7 and Exhibit 2 thereto). The last charge on the Manzano Account

was made on November 26, 2024, and the last payment on the Manzano Account was made on November 8, 2024. (Ex. 2 to Wiese Dec.).

### 2.    The Grisham Account.

On or about March 12, 2024, Grisham opened a COB credit card account bearing an account number ending in -0181 (the "Grisham Account"). (Wiese Dec. ¶ 11.) The credit card for the Grisham Account was mailed to Grisham at the address provided on Grisham's credit application. (*Id*.) Enclosed with the credit card was a copy of the credit card agreement governing the Grisham Account (the "Grisham Card Agreement"). (*Id.* ¶ 11 and Exhibit 5 thereto.) There is no record of the Grisham Card Agreement having been returned to COB as undeliverable.  (Wiese Dec. ¶ 12.)

The Grisham Card Agreement provides that it is accepted "when [Grisham] use[s] the [Grisham] Account." (Ex. 5 to Wiese Dec., p. 2 ("**Accepting this Agreement**").) Grisham used his COB credit card to make purchases, as evidenced by the billing statements and the balance maintained on the Grisham Account. (Wiese Dec. ¶ 13 and Exhibit 6 thereto). The last charge on the Grisham Account was made on November 22, 2024, and the last payment on the Grisham Account was made on October 11, 2024. (Ex. 6 to Wiese Dec.).

### 3.    The Torrez Account.

On or about March 26, 2024, Torrez opened a COB credit card account bearing an account number ending in -7755 (the "Torrez Account"). (Wiese Dec. ¶

15). The credit card for the Torrez Account was mailed to Torrez at the address provided on Torrez's credit application. (*Id*.) Enclosed with the credit card was a copy of the credit card agreement governing the Torrez Account (the "Torrez Card Agreement"). (*Id.* ¶ 17 and Exhibit 9 thereto.) There is no record of the Torrez Card Agreement having been returned to COB as undeliverable. (Wiese Dec. ¶ 18.)

The Torrez Card Agreement provides that it is accepted "when [Torrez] use[s] the [Torrez] Account." (Ex. 9 to Wiese Dec., p. 2 ("**Accepting this Agreement**").) Torrez used his COB credit card to make purchases, as evidenced by the billing statements and the balance maintained on the Torrez Account. (Wiese Dec. ¶ 19 and Exhibit 10 thereto). The last charge on the Torrez Account was made on November 13, 2024, and the last payment on the Torrez Account was made on July 3, 2024. (Exhibit 10 to Wiese Dec.).

## B.    The Arbitration Agreement.

The Manzano Card Agreement, the Grisham Card Agreement, and the Torrez Card Agreement (collectively, the "Card Agreements") each include an arbitration provision (the "Arbitration Agreement"),[1] which permits Defendants to elect mandatory arbitration of "any controversies or disputes arising from or relating in any way to your Account; any service(s) or programs related to your Account; and,

---

[1] For the sake of brevity, and because the arbitration provisions contained in the Card Agreements governing Plaintiffs' accounts are identical, references to the "Arbitration Agreement" refer to all subject arbitration provisions collectively unless otherwise noted.

if permitted by the rules of the arbitration forum, any collection of debt related to your Account." (*See* Ex. 1 to Wiese Dec., p. 6; Ex. 5 to Wiese Dec., p. 6; Ex. 9 to Wiese Dec., p. 6.) The Arbitration Agreement expressly states, in bold capital letters:

### Arbitration Agreement

#### PLEASE READ CAREFULLY—IMPORTANT—AFFECTS YOUR LEGAL RIGHTS

This agreement to arbitrate provides that you or we can require controversies or disputes between us to be resolved by BINDING ARBITRATION. You have the right to REJECT this agreement to arbitrate by using the procedure explained below.[2]

(*Id.*) (emphasis in original).

The Arbitration Agreement explains that the words "'we' or 'us' includes Credit One Bank, N.A., all of its parents, subsidiaries, affiliates, successors, predecessors, employees, and related persons or entities, and all third parties who are regarded as agents or representatives of us in connection with the subject matter of the claim or dispute at issue." (*Id.*) Further, the Arbitration Agreement provides that "[i]n addition to you and us, the rights and duties described in this agreement to arbitrate apply to: any third party co-defendant of a claim subject to this arbitration

---

[2] To reject the Arbitration Agreement, each Plaintiff was required to send a written notice of rejection within 45 days of the date the applicable Arbitration Agreement was provided to them. (*See* Ex. 1 to Wiese Dec., p. 8; Ex. 5 to Wiese Dec., p. 8; Ex. 9 to Wiese Dec., p. 8.) No Plaintiff did so. (Wiese Dec. ¶¶ 8, 13, 18.)

provision . . ." (Ex. 1 to Wiese Dec., p. 8; Ex. 5 to Wiese Dec., p. 8; Ex. 9 to Wiese Dec., p. 8 ("**Other Parties Subject to this Agreement to Arbitrate**").)

**C.      Sale of the Accounts.**

On July 31, 2025, COB sold and assigned the Manzano Account and on August 21, 2025, LVNV acquired the right, title, and interest in and to the Manzano Account. (*See* Wiese Dec. ¶ 9; *see also* Declaration of E. Paige Hale (hereinafter "Hale Dec."), attached hereto as Exhibit B, ¶¶ 5-14.) On August 25, 2025, correspondence was sent to Manzano explaining that the new owner of the Manzano Account is LVNV. (Wiese Dec. ¶ 10 and Exhibit 4 thereto.)

On May 31, 2025, COB sold and assigned the Grisham Account and on June 17, 2025, LVNV acquired the right, title, and interest in and to the Grisham Account. (Wiese Dec. ¶ 15; Hale Dec. ¶¶ 15-24.) On July 9, 2025, correspondence was sent to Grisham explaining that the new owner of the Grisham Account is LVNV. (Wiese Dec. ¶ 16 and Exhibit 8 thereto.)

On June 30, 2025, COB sold and assigned the Torrez Account and on July 21, 2025, LVNV acquired the right, title, and interest in and to the Torrez Account. (Wiese Dec. ¶ 21; Hale Dec. ¶¶ 25-34.) On July 28, 2025, correspondence was sent to Torrez explaining that the new owner of the Torrez Account is LVNV. (Wiese Dec. ¶ 22 and Exhibit 12 thereto.)

64044950 v1                                                    6

Rather than submit their claims against Defendants to arbitration, Plaintiffs initiated this lawsuit on October 21, 2025, alleging that "Defendants have initiated a campaign of abusive, false, unfair, unreasonable, and unlawful debt collection activity directed against the Plaintiffs." (Compl. ¶ 4.) Based upon these allegations, Plaintiffs assert five separate Counts:

(I)     Violations of the Fair Debt Collection Practices Act ("FDCPA"), 5 U.S.C. § 1692 *et seq*., against all Defendants;

(II)    Violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*., against COB;

(III)   Violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., against COB and LVNV;

(IV)    Violations of the Gramm Leach Bliley Act ("GLBA"), 15 U.S.C. § 6801 - § 6827 *et seq*., against COB; and

(V)     Violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq*., against COB.

(*See generally* Compl.)

### III. <u>ARGUMENT</u>

Under the facts set forth above, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., mandates enforcement of the Arbitration Agreement. All of Plaintiffs' claims against Defendants must be submitted to individual, binding arbitration and stayed.

## A.    The Arbitration Agreement Is Covered by the FAA.

The FAA applies to, and governs, the Arbitration Agreement. Pursuant to Section 2, "the FAA applies to all arbitration agreements involving transactions in maritime or interstate commerce." *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 699 (8th Cir. 2008) (citing 9 U.S.C. § 2). The term "involving commerce" has been interpreted as the functional equivalent of the more familiar term "affecting commerce" and "encompasses a wider range of transactions than those actually 'in commerce' – that is, 'within the flow of interstate commerce.'" *Citizens Bank v. Alfabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273 (1995)). In other words, the FAA extends to the full reach of the Commerce Clause. *See Allied-Bruce Terminix*, 513 U.S. at 270; *Perry v. Thomas*, 482 U.S. 483, 490 (1987).

The requisite nexus to interstate commerce under the FAA is easily satisfied here. First, the Arbitration Agreement expressly states that "is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the 'FAA') . . ." (*See* Ex. 1 to Wiese Dec., p. 6; Ex. 5 to Wiese Dec., p. 6; Ex. 9 to Wiese Dec., p. 6.) Because the Arbitration Agreement provides that the FAA controls, this alone suffices to satisfy the interstate commerce requirement. *See Staples v. The Money Tree, Inc.*, 936 F. Supp. 856, 858 (M.D. Ala. 1996) (holding that when a contract expressly provides

that the transaction involves interstate commerce within the meaning of the FAA, "[a] court must, and will, enforce the stipulation and apply the FAA to the arbitration agreement contained in the contract"); *see also Pest Mgmt., Inc. v. Langer*, 369 Ark. 52, 59–60, 250 S.W.3d 550, 556 (2007) (holding that the FAA governed an arbitration agreement because "the parties contracted that the subject matter concerned a 'transaction involving interstate commerce'"); *Williams v. MetroPCS Wireless, Inc.*, Case No: No. 09–22890–CIV, 2010 WL 62605, at *5 (S.D. Fla. Jan. 5, 2010) (applying FAA where operative arbitration clauses noted that the FAA would apply); *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 954 (N.D. Ohio 2009) (concluding that the "Arbitration Clause is governed by the Federal Arbitration Act . . . and not by any state arbitration law" because "the Contract itself provides that '[t]he Federal Arbitration Act governs this Arbitration Clause'").

It is also clear that the Card Agreements concerned transactions "involving interstate commerce." It is well-settled that the delivery, transfer, or movement of goods, services, or other articles of commerce "across state lines has long been recognized as a form of 'commerce.'" *Camps Newfound/Owatonna, Inc. v. Town of Harrison,* 520 U.S. 564, 573 (1997); s*ee also Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 36 (1980); *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 194, 6 L. Ed. 23, 69 (1824). Here, Plaintiffs are Arkansas residents asserting claims relating to credit card Accounts which originated with COB, a Nevada bank. (*See* Compl. ¶ 16; Wiese Dec.

¶¶ 2, 5, 11, 17.) Therefore, funds crossed state lines when credit for the Accounts was extended to Plaintiffs and payments were made. Additionally, in order to open each Account, COB sent each Plaintiff a credit card and Card Agreement in the mail using interstate commerce. (*See* Wiese Dec. ¶¶ 5, 11, 17.) Courts routinely find similar conduct sufficient to satisfy the "interstate commerce" requirement. *See, e.g.*, *Dodson v. Barclays Bank Del.*, No. 1:19-cv-1004-TFM-B, 2020 WL 5414352, at *5 (S.D. Ala. Sept. 9, 2020) (finding that an underlying contract evidenced a transaction affecting interstate commerce where the plaintiff, an Alabama resident, opened a credit card account with a Delaware bank); *Stiles v. Home Cable Concepts, Inc.*, 994 F. Supp. 1410 (M.D. Ala. 1998) (agreement governing credit card involved interstate commerce and was subject to FAA); *Ingram v. Citicorp Credit Servs., Inc. (USA)*, No. 05-2095, 2005 WL 6518077, at *1 (W.D. Tenn. July 11, 2005), *report and recommendation adopted sub nom. Ingram v. Citicorp Credit Serv., Inc. (USA)*, No. 05-2095, 2005 WL 6518076 (W.D. Tenn. Aug. 25, 2005) (credit card transactions "implicate interstate commerce" and are subject to the FAA).

As such, whether by the agreed-upon choice that the FAA shall apply, or by the fact that the transactions underlying each Card Agreement involved interstate commerce, there can be no doubt that the FAA applies to this matter. Thus, the Court must apply the language of the FAA, and legal authority analyzing such language, in determining whether to enforce arbitration here.

## B.    Arbitration Agreements Are Favored and Presumptively Valid.

The FAA establishes that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress enacted the FAA to overcome long-standing judicial hostility toward pre-dispute arbitration agreements. *Allied-Bruce Terminix*, 513 U.S. at 270. With its enactment, Congress placed arbitration agreements "upon the same footing as other contracts." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 225–26 (1987) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)). As such, "generalized attacks on arbitration," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991), based on the "suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants," have been repudiated as "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 481 (1989).

Congress, with its enactment of the FAA, and the Supreme Court, through its interpretation of the FAA, have together created a strong federal policy favoring the enforcement of arbitration agreements. These policies are so strong that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of

the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). It is against this backdrop that the Court must evaluate the merits of Defendants' Motion.

## C.    The Arbitration Agreement Is Enforceable Under the FAA.

"In reviewing an arbitration agreement" under the FAA, "'[courts] ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement.'" *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016) (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)). "If the parties have a valid arbitration agreement that encompasses the dispute, a motion to compel arbitration must be granted." *Id*. at 784. Both of these prerequisites for enforcement are satisfied.

### 1.    Each Plaintiff entered into a valid, written agreement to arbitrate.

"[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants." *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Each Card Agreement contains a choice-of-law clause providing that it "is governed by and interpreted in accordance with the laws applicable to national banks, and, where no such laws apply, by the laws of the State of Nevada." (*See* Ex. 1 to Wiese Dec., p. 8; Ex. 5 to Wiese Dec., p. 8; Ex. 9 to Wiese

64044950 v1                                              12

Dec., p. 8.) Thus, the Card Agreements invoke both the FAA and Nevada law. Further, to the extent the Court should determine that Arkansas law applies, the parties also formed valid agreements to arbitrate under Arkansas law.

Under Nevada law, "[a]n agreement governing a credit card account is accepted when the card is used after receiving the agreement." *Merritt v. Credit One Bank, N.A.*, No. 220CV1335JCMVCF, 2020 WL 5775749, at *1 (D. Nev. Sept. 28, 2020) (citing Nev. Rev. Stat. Ann. § 97A.140 ("A cardholder shall be deemed to have accepted the written terms and conditions provided by the issuer upon subsequent actual use of the credit card.")); *see also Pacha v. Credit One Bank, N.A.*, No. 220CV00148KJDBNW, 2020 WL 6363840, at *2 (D. Nev. Oct. 29, 2020) (same); *Russell v. Midland Credit Mgmt., Inc.*, No. 20-CV-00618, 2021 WL 1192580, at *5 (N.D. Ill. Mar. 30, 2021) (same) (applying Nevada law). Likewise, under Arkansas law, "the issuance of a credit card is an offer, and the contract becomes binding when the card holder retains and uses the card, thereby agreeing to the terms of the written agreement." *In re Richardson*, 557 B.R. 686, 693 (Bankr. E.D. Ark. 2016) (citation omitted); *see also In re Pettingill*, 403 B.R. 624, 628 (Bankr. E.D. Ark. 2009) (same); *In re Brown*, 403 B.R. 1, 4 (Bankr. E.D. Ark. 2009) (same).

Courts around the country have concluded the same. *See Dwyer v. Discover Fin. Servs.*, No. CV WMN-15-2322, 2015 WL 7754369, at *3 (D. Md. Dec. 2, 2015)

(granting motion to compel arbitration pursuant to arbitration clause in Discover card agreement); *Rice v. Credit One Fin.*, No. 5:15-CV-130-BO, 2015 WL 4528933, at *1 (E.D.N.C. July 27, 2015) ("By 'requesting and receiving, signing and using' her Credit One credit card, plaintiff agreed to the terms of the Agreement, including arbitration, and formed a legally binding contract with Credit One."); *Comrey v. Discover Fin. Servs., Inc.*, 806 F. Supp. 2d 778, 783 (M.D. Pa. 2011) ("By virtue of her application for a credit card account with Discover Bank and her subsequent use of the credit card issued to her, Comrey agreed to the terms of the cardmember agreement."); *Blanchard v. MBNA Am. Bank, N.A.*, No. 1:05CV81, 2005 WL 1921000, at *7 (W.D.N.C. Aug. 9, 2005) ("By failing to 'opt-out' and by using the credit accounts, either personally or by and through Ms. McDonald after the 'opt-out' period, the plaintiff accepted the terms of the proposed amendment requiring arbitration.").

Under this wealth of authority, COB undoubtedly formed an agreement to arbitrate with each Plaintiff as it relates to the Card Agreements. COB mailed each Plaintiff of copy of the Card Agreement governing his or her Account to the address provided on his or her credit application. (*See* Wiese Dec. ¶¶ 5, 11, 17.) Each Card Agreement provides that use of the Account constitutes acceptance of the Card Agreement. (*See* Ex. 1 to Wiese Dec., p. 2; Ex. 5 to Wiese Dec., p. 2; Ex. 9 to Wiese Dec., p. 2.) After receiving their respective credit cards and Card Agreements,

Plaintiffs did not close their Accounts or opt out of the Arbitration Agreement. (*See* Wiese Dec. ¶¶ 8, 14, 20.) Rather, Plaintiffs continued to use their Accounts by making charges and payments on them, as evidenced by the monthly statements showing charges on the Accounts. (*See id.* ¶¶ 7, 13, 19 and Exhibits 2, 6 & 10 thereto.) Accordingly, under both Nevada and Arkansas law, Plaintiffs are bound by the Arbitration Agreement.[3] *See Merritt*, 2020 WL 5775749, at \*1; *In re Richardson*, 557 B.R. at 693.

## 2.    The Arbitration Agreement covers Plaintiffs' claims.

The Arbitration Agreement is also unquestionably broad enough in scope to

---

[3] In one of their filings, Plaintiffs contend they "rescinded the agreement in January and February of 2025," and thus "cannot possibly be bound to arbitrate their claims with COB." (Doc. 16 at 1.) However, "[t]he Supreme Court has made clear that 'unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.'" *Benchmark Ins. Co. v. SUNZ Ins. Co.*, 36 F.4th 766, 772 (8th Cir. 2022) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006)). Because Plaintiffs' rescission contentions are attacks on the validity of their respective Cardmember Agreements in their entirety and "not just the arbitration provision," they must "be resolved in arbitration" and "cannot defeat Defendants' request to compel arbitration in this case." *See Goza v. Multi-Purpose Civic Ctr. Facilities Bd. for Pulaski Cnty.*, No. 12-CV-6125, 2014 WL 3672128, at \*4 (W.D. Ark. July 23, 2014) (citations omitted).

Moreover, "[e]ven if the underlying credit agreement was terminated," this "does not necessarily release the parties from their obligations under that agreement, including the obligation to arbitrate." *Koch v. Compucredit Corp.*, 543 F.3d 460, 465 (8th Cir. 2008). "To the contrary, there is 'a presumption in favor of postexpiration arbitration of matters unless negated expressly or by clear implication.'" *Id.* (quoting *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 204 (1991)). And far from stating or implying that termination relieves the parties of their obligation to arbitrate, the Arbitration Agreement provides that it "shall *survive* changes in the Agreement and termination of the Account or the relationship between you and us." (*See* Ex. 1 to Wiese Dec., p. 8; Ex. 5 to Wiese Dec., p. 8; Ex. 9 to Wiese Dec., p. 8 (emphasis added).)

encompass the claims in this action. Courts "must liberally construe a valid arbitration clause, 'resolving doubts in favor of arbitration . . . unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Unison Co., Ltd. v. Juhl Energy Dev., Inc*., 789 F.3d 816, 818 (8th Cir. 2015) (quoting *3M Co. v. Amtex Sec., Inc*., 542 F.3d 1193, 1199 (8th Cir. 2008)).

To determine whether a particular dispute falls within the scope of an arbitration agreement, "the first question is 'whether the arbitration clause is broad or narrow.'" *Parm v. Bluestem Brands, Inc*., 898 F.3d 869 (8th Cir. 2018) (quoting *Unison*, 789 F.3d at 818). "If the clause is broad, the liberal federal policy favoring arbitration agreements" applies with even greater force, and "requires that a district court send a claim to arbitration . . . as long as the underlying factual allegations simply touch matters covered by the arbitration provision." *Id*. Indeed, "'[in] the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *See AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted).

"Arbitration clauses covering claims 'arising out of' or 'relating to' an agreement are broad." *Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017). "Such a provision constitutes the broadest language the parties could

reasonably use to subject their disputes to that form of settlement, including collateral disputes that relate to the agreement containing the clause." *Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997). As such, "[i]t generally does not matter that claims sound in tort, rather than contract," as a broad arbitration clause will "cover tort suits arising from the same set of operative facts covered by a contract between the parties to the agreement." *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 837 (8th Cir. 2010) (quoting *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 800 (8th Cir. 2005)).

Here, the Arbitration Agreement defines "Claims subject to arbitration," in pertinent part, as follows:

> [A]ny controversies or disputes <u>arising from or relating in any way</u> to your Account; any transactions involving your Account . . . any collection of debt related to your Account . . . Claims subject to arbitration include any controversies or disputes based on any theory of law, whether contract, tort, statute, regulation, common law, or equity . . . Arbitration will apply even if your Account is closed . . . <u>Any questions about what Claims are subject to arbitration shall be resolved by interpreting this agreement to arbitrate in the broadest way the law will allow it to be enforced.</u>

(*See* Ex. 1 to Wiese Dec., p. 6; Ex. 5 to Wiese Dec., p. 6; Ex. 9 to Wiese Dec., p. 6.) Because the Arbitration Agreement encompasses all claims "arising from or relating in any way to" Plaintiffs' Accounts and affirmatively states that it shall be interpreted "in the broadest way the law will allow," it is a broad arbitration provision. *See Zetor*, 861 F.3d at 810.

Nor can Plaintiffs deny that their claims are related to their respective Accounts. The very actions which Plaintiffs claim Defendants took in violation of various statutory provisions would not exist but for their Accounts, which are governed by the Card Agreements. Additionally, each Plaintiff's relationship with each Defendant results from his or her Card Agreement due to LVNV's status as an assignee of the Accounts, and Resurgent's status as LVNV's agent and the servicer of the Accounts. And Plaintiffs' claims for alleged violations of the FDCPA, TILA, FCRA, GLBA, and ECOA—which all arise from Defendants' alleged efforts to collect on Plaintiffs' Accounts (*see generally* Compl.)—are clearly claims "arising from or relating to" Plaintiffs' Accounts and the purported "collection of debt related to" Plaintiffs' Accounts. As such, Plaintiffs' claims fit neatly within the broad scope of the Arbitration Agreement. *See, e.g., also Barrett v. Discover Fin. Servs., LLC*, No. 4:17-CV-00984-BCW, 2018 WL 11694183, at \*3 (W.D. Mo. May 1, 2018) (compelling FCRA claims to arbitration where agreement required arbitration of claims "arising from or relating to" plaintiff's credit account despite argument that plaintiff's "credit account did not exist after his bankruptcy discharge"); *Henderson v. Credit Acceptance Corp.*, No. 4:21 CV 934 RWS, 2021 WL 4785852, at \*1 (E.D. Mo. Oct. 14, 2021) (compelling arbitration of TILA and ECOA claims pursuant to arbitration agreement covering "any controversy or claim between [plaintiff] and [defendant financing company] arising out of or in any way related to" the financing

agreement); *Campbell v. Jacob*, No. 4:19-CV-179-JM, 2019 WL 4020690, at *1 (E.D. Ark. Aug. 26, 2019) (FDCPA claims alleging unlawful debt collection of the plaintiff's credit card balance fell within the scope of arbitration clause which encompassed "any dispute or claim . . . if it relates to your account")

In sum, Plaintiffs cannot show "with positive assurance that the [A]rbitration [Agreement] is not susceptible of an interpretation that covers the asserted dispute." *See AT&T Techs.*, 475 U.S. at 650. Accordingly, all of Plaintiffs' claims are subject to arbitration, and Defendants' Motion should be granted.

**D.    LVNV and Resurgent Are Entitled to Enforce the Arbitration Agreement.**

As discussed more fully below, the parties have clearly and unmistakably delegated threshold issues of arbitrability to the arbitrator. (*See* Ex. 1 to Wiese Dec., p. 6; Ex. 5 to Wiese Dec., p. 6; Ex. 9 to Wiese Dec., p. 6.) Thus, "the Court's inquiry is at an end, and all other questions"—including LVNV's and Resurgent's ability to compel Plaintiffs' claims to arbitration—"must go before an arbitrator." *See OLOTOR, L.L.C. v. Townsend*, No. 5:20-CV-5013, 2020 WL 1861661, at *6 (W.D. Ark. Apr. 13, 2020). Even if the Court were to consider the question, however, Plaintiffs are nonetheless bound to arbitrate their claims against LVNV and Resurgent.

1.    **LVNV may enforce the Arbitration Agreement as an assignee.**

Under the Arbitration Agreement, the parties entitled to exercise arbitration rights are not limited to the original parties to the agreement and include assignees such as LVNV. Specifically, the Arbitration Agreement provides for the arbitration of "controversies or disputes between you and us," and defines "us" to include "all of [COB's] parents, subsidiaries, affiliates, successors, predecessors, employees, and related persons or entities, and all third parties who are regarded as agents or representatives of us in connection with the subject matter of the claim or dispute at issue." (*See* Ex. 1 to Wiese Dec., p. 6; Ex. 5 to Wiese Dec., p. 6; Ex. 9 to Wiese Dec., p. 6.) Each Card Agreement also specifically authorizes COB to "assign any or all of [its] rights and obligations under this Agreement." (*See* Ex. 1 to Wiese Dec., p. 8; Ex. 5 to Wiese Dec., p. 8; Ex. 9 to Wiese Dec., p. 8.)

Moreover, "[i]t is well established that an assignee 'stands in the shoes' of the assignor and succeeds to all rights of the assignor." *Interim Cap. LLC v. Herr L. Grp., Ltd.*, No. 2:09-CV-01606-KJD, 2011 WL 7047062, at \*6 (D. Nev. Oct. 21, 2011); *UMLIC 2 Funding Corp. v. Butcher*, 333 Ark. 442, 447, 970 S.W.2d 211, 214 (1998) (recognizing "the generally established rule that an assignee steps into the shoes of an assignor"). "Therefore, even if the agreement itself d[oes] not expressly authorize assignment of the agreement and state that assignees assume the same rights as [the assignor] under the contract," an assignee nonetheless "stands in

the shoes of [the assignor] and is authorized to enforce the arbitration clause." *See James v. Portfolio Recovery Assocs., LLC*, No. 14-CV-03889-RMW, 2015 WL 720195, at *5 (N.D. Cal. Feb. 20, 2015) (applying Nevada law); *see also Campbell*, 2019 WL 4284106, at *3 (holding that assignment "caused [assignee] to substitute for [the assignor] in the arbitration provision" and allowing assignee to compel arbitration despite "the omission of successors or assigns in the [subject] cardholder agreement"); *France v. Flagship Credit Acceptance, LLC*, No. 4:24-CV-00814-KGB, 2025 WL 2601517 (E.D. Ark. Sept. 9, 2025) (holding that assignee was entitled to enforce arbitration clause within subject contract).

LVNV has provided evidence showing that it was assigned each Plaintiff's Account. Each Declaration of Account Transfer between LVNV and Resurgent Acquisitions LLC states that Resurgent Acquisitions LLC "transferred, sold, assigned, conveyed, granted and delivered" to LVNV the assets "identified on Exhibit A." (Hale Dec. ¶¶ 5, 15, 25 and Exhibits 1, 6, & 11 thereto.) LVNV has not filed the full lists of accounts referenced in the Declarations of Account Transfer because the lists are too voluminous. (Hale Dec. ¶¶ 5, 15, 25.) However, LVNV has provided an abstract of the data for each Plaintiff's Account received from Resurgent Acquisitions LLC upon transfer of the relevant Account. (Hale Dec. ¶¶ 8, 18, 28 and Exhibits 2, 7, & 12 thereto.) This data identifies the Accounts by listing Plaintiffs' names, addresses, and social security numbers; the account numbers; and

64044950 v1

21

other pertinent data for the Accounts, including the date the Accounts were opened and the date of the last payment on each Account. (*Id.*)  Because the Declarations of Account Transfer, considered together with Wiese's declaration, Hale's declaration, and the account data attached thereto, identify the assignor, assignee, and the Accounts, LVNV has provided sufficient evidence that it was assigned the Accounts that originated with COB.

"Thus, LVNV is the assignee and successor-in-interest to all the contractual rights in the original [Card] Agreement[s] between Plaintiff[s] and [COB], including the right to compel arbitration . . . and it is therefore entitled to enforce its rights under the [Card] Agreement[s] as if it were the original party." *See Hernandez v. Allied Interstate, Inc.*, No. 12CV09271DMGJEM, 2013 WL 12123682, at *5 (C.D. Cal. Aug. 27, 2013) (applying Nevada law). "Indeed, several courts have examined assignments nearly identical to the one here—with the only difference being the pool of accounts transferred from Credit One ultimately to LVNV—and found those assignments valid." *See Simiring v. LVNV Funding, LLC*, No. 1:24-cv-20803-GAYLES, 2025 WL 876935, at *5 (S.D. Fla. Mar. 21, 2025) (collecting cases and concluding based upon virtually identical evidence that "LVNV now stands in the shoes of Credit One and may assert its right to proceed in arbitration under the Card Agreement"); *see also Cobb v. Resurgent Capital Services, LP, et al.*, No. 19-cv-5833, 2021 WL 321408, at *4 (N.D. Ga. Feb. 1, 2021) ("Because Credit One

assigned Plaintiff's Account to Defendant LVNV (albeit indirectly through a string of intermediary assignees), Defendant LVNV does in fact stand in [Credit One's] shoes as its assignee and now has all the same rights regarding [Plaintiff's] account as [Credit One] had when the Cardmember Agreement was formed."); *Mollison v. LVNV Funding, LLC*, No. 3:18-cv-01023, 2018 WL 11326704, at *5 (S.D. Cal. Dec. 14, 2018) ("Defendants have provided sufficient evidence showing that Defendant LVNV is the assignee of the [Credit One] agreement."); *Holland v. LVNV Funding, LLC*, No. 5:16-CV-00069, 2016 WL 6156187, at *8-10 (W.D. Ky. Oct. 21, 2016) (enforcing LVNV's ability to compel arbitration of claims pursuant to COB's credit agreement assigned to LVNV). Accordingly, LVNV is entitled to enforce the Arbitration Agreement.

### 2. Resurgent is also entitled to enforce the Arbitration Agreement.

#### a. *Resurgent may compel arbitration as LVNV's agent.*

Plaintiffs' claims against Resurgent, the servicer of the Accounts on behalf of LVNV, are also subject to arbitration. "Chapter 1 of the Federal Arbitration Act (FAA) permits courts to apply state-law doctrines related to the enforcement of arbitration agreements," including those "that authorize the enforcement of a contract by a nonsignatory." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 437 (2020); *see also Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 732 (8th Cir. 2009) ("The Supreme Court

has ruled that state contract law governs the ability of nonsignatories to enforce arbitration provisions."). Both Nevada and Arkansas law recognize that "[a] nonsignatory may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency." *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 124 Nev. 629, 634, 189 P.3d 656, 660 (2008); *see also Ahlers v. Ryland Homes Nevada, LLC*, 2010 WL 3276221, at *1 (Nev. Apr. 16, 2010) (noting that agency is one of "several ways in which a nonsignatory to a contract may properly enforce an arbitration agreement against a signatory of a contract" under Nevada law); *Pet Quarters, Inc. v. Badian*, No. 4:04 CV 697(RSW), 2006 WL 1307669, at *3 (E.D. Ark. May 9, 2006) (under Arkansas law "[a]n arbitration agreement is enforceable by an employee or agent of a party to an agreement even though the employee or agent did not sign the actual agreement").

Here, there is no question that Resurgent "is the servicer and authorized agent for LVNV and manages the accounts currently at issue." (*See* Hale Dec. ¶ 1.) Indeed, Plaintiffs themselves allege that all Defendants "are agents of each other and are legally responsible for the acts and omissions of each other." (Compl. ¶ 7.) And again, the plain language of the Arbitration Agreement requires arbitration of claims asserted against "third parties who are regarded as *agents* or *representatives* of us in connection with the subject matter of the claim or dispute at issue." (*See* Ex. 1 to Wiese Dec., p. 6; Ex. 5 to Wiese Dec., p. 6; Ex. 9 to Wiese Dec., p. 6 (emphasis

added).) "This evidence is sufficient to establish that Resurgent was hired as the agent of LVNV to collect on Plaintiff[s'] debt," and Resurgent is therefore also entitled to enforce the Arbitration Agreement. *See Hernandez*, 2013 WL 12123682, at \*5 (concluding that Resurgent was entitled to compel arbitration as LVNV's agent under Nevada law).

### b. *Equitable estoppel also allows Resurgent to compel arbitration.*

Additionally, non-signatories to a contract containing an arbitration clause may compel arbitration pursuant to equitable estoppel principles. *See Ahlers v. Ryland Homes Nevada, LLC*, 367 P.3d 743 (Table), No. 52511, 2010 WL 3276221, at \*1 (Nev. Apr. 16, 2010); *see also PRM*, 592 F.3d at 834. Under Nevada law, "application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *See Hard Rock Hotel, Inc. v. Eighth Judicial District Ct.*, 390 P.3d 166 (Table), No. 71274, 2017 WL 881877, at \*2 (Nev. Feb. 27, 2017). Similarly, Arkansas law "allow[s] a nonsignatory to compel arbitration when, as a result of the nonsignatory's close relationship with a signatory, a failure to do so would eviscerate the arbitration agreement." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 785 (8th Cir. 2016) (quoting *PRM*, 592 F.3d at 834).

Plaintiffs' allegations against COB, LVNV, and Resurgent are wholly interdependent and inseparable. They refer collectively to COB, LVNV, and Resurgent throughout the Complaint as "Defendants," stating, for example, that "Defendants have taken unjust advantage of the Plaintiffs" and "Defendants are a debt collector." (*See* Compl. ¶¶ 43, 79.) In fact, Plaintiffs make no allegations of wrongdoing against Resurgent that are not also made against COB and LVNV. (*See generally id.*) Accordingly, Plaintiffs have raised allegations of "substantially interdependent and concerted misconduct by both [a] nonsignatory"—Resurgent—"and one or more of the signatories to the contract"—COB and LVNV, entitling Resurgent to enforce the Arbitration Agreement under Nevada law. *See Hard Rock Hotel*, 2017 WL 881877, at *2. Moreover, Resurgent is "closely related to" LVNV, and Plaintiffs' "claims arise from their relationship with" COB and LVNV. *See Robinson*, 841 F.3d at 785; *see also Nesslage v. York Secs., Inc.*, 823 F.2d 231, 233 (8th Cir. 1987) (permitting a nonsignatory to compel arbitration as the "disclosed agent" of a signatory). As a result, if Plaintiffs "were allowed to sue" Resurgent as LVNV's agent for COB's and LVNV's alleged misconduct, they "would be able to evade the arbitration agreement and thus eviscerate it." *See Robinson*, 841 F.3d at 785. Thus, "arbitration is appropriate" under Arkansas equitable estoppel principles as well, and Resurgent is entitled to enforce the Arbitration Agreement for this additional reason. *Id.*

**c.    _Resurgent may compel arbitration as a third-party beneficiary of the Arbitration Agreement._**

Finally, a nonsignatory may compel arbitration where it is a third-party beneficiary of the agreement to arbitrate. *See, e.g., Dellarocca v. Atl. Credit & Fin., Inc.*, No. 19CV2667RRMARL, 2020 WL 13553687, at *3 (E.D.N.Y. Sept. 28, 2020) ("Nevada courts recognize . . . the rights of third-party beneficiaries to compel arbitration." (citing *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 124 Nev. 629, 634 (2008)); *Bigge Crane & Rigging Co. v. Entergy Arkansas, Inc.*, 457 S.W.3d 265, 268 (Ark. 2015) (noting that "a nonparty may compel arbitration through 'traditional principles of state law'" including "third-party beneficiary theories" (quoting *Arthur Andersen, LLP v. Carlisle*, 556 U.S. 624, 631 (2009))). In Nevada, a party is a third-party beneficiary when "the contracting parties demonstrated a clear intent to benefit the third party and [] the third party's reliance was foreseeable." *Warner v. City of Reno*, 126 Nev. 767 (2010). Similarly, Arkansas law holds that "[i]f a contract is made for the benefit of a third party, then it is actionable by such third party if there is substantial evidence of a clear intention to benefit that third party." *Bigge Crane & Rigging*, 457 S.W.3d at 272.

As noted, the Arbitration Agreement covers "controversies or disputes between you and us," with "us" encompassing COB's "affiliates, successors, predecessors, employees, and related persons or entities, and all third parties who are regarded as agents or representatives of us in connection with the subject matter

of the claim or dispute at issue." (Ex. 1 to Wiese Dec., p. 6; Ex. 5 to Wiese Dec., p. 6; Ex. 9 to Wiese Dec., p. 6.) In addition, the Arbitration Agreement separately provides that "the rights and duties described in this agreement to arbitrate apply to: any third party co-defendant of a claim subject to this arbitration provision." (Ex. 1 to Wiese Dec., p. 8; Ex. 5 to Wiese Dec., p. 8; Ex. 9 to Wiese Dec., p. 8.) The Arbitration Agreement thus expressly contemplates enforcement by Resurgent both as LVNV's agent, and by virtue of its status as a co-defendant to Plaintiffs' claims against COB and LVNV.[4]  Given that the Arbitration Agreement contemplates arbitration of "any controversies or disputes arising from or relating in any way to [Plaintiffs'] Account[s]," including "any transactions involving [Plaintiffs'] Account[s]" and "any collection of debt related to [Plaintiffs'] Account[s]," and claims "based on any theory of law, whether contract, tort, [or] statute," Resurgent's enforcement of the Arbitration Agreement was clearly intended and foreseeable. *See Bakon v. Rushmore Serv. Ctr., LLC*, No. 16-CV-6137, 2017 WL 2414639, at *3 (E.D.N.Y. June 2, 2017) (holding that affiliate of signatory to arbitration agreement contemplating enforcement by "affiliates" and "assigns" could compel arbitration as third-party beneficiary).

---

[4] All Counts of the Complaint brought against LVNV and Resurgent are also brought against COB. (*See generally* Compl.)

Other courts have likewise held that Resurgent is entitled to enforce arbitration agreements arising from accounts owned by LVNV. *See, e.g.*, *Wexler v. LVNV Funding, LLC*, No. 22 Civ. 1348 (PAE), 2023 WL 4305776, at *8-9 (S.D.N.Y. Jun. 30, 2022) ("Accordingly, because LVNV was an assignee and because Resurgent can invoke equitable estoppel, each may seek to enforce the arbitration agreement."); *Smith v. Resurgent Capital Services, LP*, No. GLR-19-2794, 2020 WL 13605057 (D. Md. Aug. 24, 2020) (compelling plaintiff's claims against LVNV and Resurgent to arbitration); *Fontaine v. Resurgent Capital Services, L.P.*, 540 F. Supp. 3d 353 (W.D.N.Y. 2021) (same); *Parker v. Resurgent Capital Services LP*, No. 4:19-cv-50-BO, 2019 WL 4643745 (E.D.N.C. Sept. 23, 2019) (same). Accordingly, Resurgent has the right to compel arbitration of Plaintiffs' claims.

## E.    Issues of Arbitrability, Including Whether LVNV and Resurgent May Enforce the Arbitration Agreements, Are Reserved for the Arbitrator.

To the extent the Court harbors doubt whether Plaintiffs' claims fall within the broad scope of the Arbitration Agreement, or any remaining questions as to threshold issues of arbitrability, the Arbitration Agreement delegates such questions to the arbitrator. Where an arbitration agreement contains a delegation provision that vests in an arbitrator the authority to determine threshold issues such as the scope of an arbitration clause, those issues must be compelled to arbitration. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67-71 (2010). In *Rent-A-Center*, the United

States Supreme Court acknowledged the right of parties to include delegation clauses in arbitration agreements, whereby they "agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." 561 U.S. at 68-69 (citing *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83-85 (2002)). When such a showing is made, "all other issues raised by Plaintiffs should not be addressed, and the Court's only role will be to enter an order compelling arbitration." *Lethas Pies, LLC v. Principis Cap., LLC*, No. 5:19-CV-05148, 2019 WL 7819489, at *3 (W.D. Ark. Oct. 23, 2019).

To be enforceable, the parties' intent to arbitrate the issue of arbitrability must be demonstrated by "clear and unmistakable evidence." *Id.* at 79. *Rent-A-Center*, 561 U.S. at 79. In particular, "an arbitration provision's incorporation of the AAA Rules—or other rules giving arbitrators the authority to determine their own jurisdiction—is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court." *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *see also HPD, LLC v. TETRA Techs., Inc.*, 2012 Ark. 408, 424 S.W.3d 304, 311 (2012) (holding that the incorporation of AAA Rules in an arbitration provision "manifests a clear and unmistakable intent to arbitrate the questions of arbitrability"). Indeed, every federal circuit court to address the question "has found that the incorporation of the AAA Rules (or similarly

worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (collecting cases).

Here, it is clear and unmistakable by its plain language that the Arbitration Provision delegates gateway determinations regarding its "validity, enforceability, coverage, meaning, or scope" to the arbitrator. (*See* Ex. 1 to Wiese Dec., p. 6; Ex. 5 to Wiese Dec., p. 6; Ex. 9 to Wiese Dec., p. 6); *see also Rent-A-Center*, 561 U.S. at 66 (finding a delegation clause to be enforceable which said the arbitrator "shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement"); *In re Checking Account Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1255 (11th Cir. 2012) (agreement providing that "[a]ny issue regarding whether a particular dispute or controversy is . . . subject to arbitration will be decided by the arbitrator" delegated to the arbitrator "whether those claims are within the scope of the arbitration agreement"). Further, the Arbitration Agreement states that "the arbitration *shall* be administered by the American Arbitration Association ('AAA') before a single arbitrator under the AAA's Consumer Arbitration Rules . . ." (*See* Ex. 1 to Wiese Dec., p. 7; Ex. 5 to Wiese Dec., p. 7; Ex. 9 to Wiese Dec., p. 7) (emphasis added).) The applicable AAA rules for consumer disputes provide that "[t]he arbitrator shall have the power to rule on their own jurisdiction, including any objections with

respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." *See* Am. Arbitration Assn. Consumer Arbitration Rules, www.adr.org, Rule R-7(a).

Thus, with both the express delegation provision and the incorporation of the AAA's arbitration rules, the parties both *clearly* and *unmistakably* agreed to delegate questions pertaining to the arbitrability of Plaintiffs' claims and the interpretation, scope, and enforceability of the Arbitration Agreement—including whether Defendants are entitled to enforce the Arbitration Agreement—to the arbitrator. *See Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (explaining that "[w]hether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability" and compelling arbitration in light of the agreement's "incorporation of the AAA Rules"); *see also Johnson v. Activision Blizzard, Inc.*, No. 3:24CV00026 JM, 2025 WL 522589, at *4 (E.D. Ark. Feb. 18, 2025) ("[B]ecause of the [arbitration agreement's] broad delegation clause, the plaintiffs' contract enforceability challenges including the disaffirmation of the agreement go to an arbitrator."). Therefore, Defendants' Motion to Compel Arbitration should be granted, and any issues relating to the arbitrability of claims should be reserved for the arbitrator.

**F.    Plaintiffs' Claims Must Proceed to Arbitration on an Individual Basis.**

Finally, the Court should compel Plaintiffs' claims to individual, as opposed to collective, arbitration. "Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018). Accordingly, courts within the Eighth Circuit have routinely held clauses requiring the parties "to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general basis" to be valid and enforceable. *Fox v. TTEC Servs. Corp.*, No. 4:19-CV-00037-KGB, 2020 WL 13882107, at \*6 (E.D. Ark. Apr. 10, 2020); *see also Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013) (upholding class action waiver and compelling arbitration); *Hill-Smith v. Silver Dollar Cabaret, Inc.*, No. 5:18-CV-5145, 2018 WL 6579917 (W.D. Ark. Dec. 13, 2018) (holding that plaintiff "has waived her right to bring a collective action on behalf of similarly situated parties" and "must proceed individually in arbitration proceedings"); *Campbell*, 2019 WL 4284106, at \*3 (compelling arbitration and striking plaintiff's class allegations pursuant to class action waiver contained in the enforceable arbitration agreement).

Here, the Arbitration Agreement unambiguously prohibits collective actions and, instead, allows arbitration to proceed on an individual basis only:

> **No Class Arbitration or Consolidation or Joinder of Parties:** Class actions and other similar procedures in which individuals seek to

represent similarly situated individuals or seek relief on behalf of the general public, and consolidation or joinder of Claims (except for claimants on the same account), are NOT available under this agreement to arbitrate. Claims in arbitration will proceed on an INDIVIDUAL basis only:

> UNLESS YOU REJECT THIS AGREEMENT TO ARBITRATE, YOU AND WE WAIVE THE RIGHT TO ASSERT OR PARTICIPATE IN A CLASS ACTION OR ANY REPRESENTATIVE OR CONSOLIDATED PROCEEDING IN COURT OR IN ARBITRATION.

(*See* Ex. 1 to Wiese Dec., p. 7; Ex. 5 to Wiese Dec., p. 7; Ex. 9 to Wiese Dec., p. 7) (bold emphasis in original).) Moreover, the Arbitration Agreement provides that "[t]he arbitrator shall have no authority to entertain any Claim as a class action or private attorney general action or on any other similar representative basis, nor shall the arbitrator have any authority to consolidate or join Claims brought by separate claimants (except for claimants on the same account)." (*Id*.) As such, the Court should hold that the Arbitration Agreement is valid and enforceable, and compel the parties to binding arbitration on an individual basis.

## G.    This Action Should Be Stayed.

This Court should not only compel arbitration of Plaintiffs' claims against Defendants, but it should also stay this action pending arbitration. Section 3 of the FAA addresses the procedure for handling cases that are referable to arbitration, stating:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in

writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall** on application of one of the parties **stay the trial of the action until such arbitration has been had** in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). Thus, under the FAA, a court *must* stay an action where the claims have been compelled to arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478–79 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceedings."). Accordingly, in conjunction with compelling Plaintiffs' claims to arbitration, Defendants move the Court to stay Plaintiffs' claims against Defendants pending their outcome in arbitration.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order compelling Plaintiffs' claims to individual arbitration and staying these proceedings.

Respectfully submitted this 4th day of February, 2026.

*/s/ Samuel A. Morris*
Samuel A. Morris, Esq. (AR No. 2021089)
BURR & FORMAN LLP
222 Second Avenue South, Suite 2000
Nashville, TN 37201
Telephone:  (615) 724-3258
Facsimile:  (615) 724-3358
Email: smorris@burr.com

Attorney for Defendants
CREDIT ONE BANK, N.A., LVNV FUNDING LLC, AND RESURGENT CAPITAL SERVICES L.P.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document has been electronically

filed with the Clerk of the Court using CM/ECF and has been served on the following

by U.S. First Class Mail on the 4th day of February, 2026:

Jacqueline Manzano
Alton Grisham
Pete Torrez
401 Paradise Heights Drive
Berryville, AR 72616
*Pro se Plaintiffs*

*/s/ Samuel A. Morris*
Samuel A. Morris
