Jacqueline Manzano
401 Paradise Heights Drive
Berryville, AR 72616
702-788-0599
Jmdesigns88@proton.me
Alton Grisham
AG-84proton.me@proton.me
Pete Torrez
ptorrez54@aol.com
*Joinder Plaintiffs, in proper person*

US DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FILED

FEB 19 2026

Ronald E. Dowling
By ______
Deputy Clerk

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| **JACQUELINE MANZANO,** ***et al*** **Plaintiff(s),** -vs- **CREDIT ONE BANK, N.A.,** ***et al*** **Defendant(s).** | **CASE NO. 3:25-cv-03072 TLB** **PLAINTIFFS JOINDER OPPOSITION TO DEBEFEDANTS MOTION TO COMPEL ARBITRATION (Dkt. 21 – 23)** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION (DKT. 21) AND STAY DISCOVERY (DKT. 23)**

**INTRODUCTION**

Defendants filed their Motion to Compel Arbitration (Dkt. 21) and Motion to Stay Discovery (Dkt. 23) on February 4, 2026—the final day permitted after this Court struck Plaintiffs' Unilateral Rule 26(f) report. These motions lack merit because no valid arbitration agreement exists and discovery must proceed.

## I. NO ARBITRATION AGREEMENT EXISTS

### A. LVNV Acquired No Contract Rights in Final Bill of Sale

The final Bill of Sale from Resurgent Acquisitions LLC to LVNV Funding LLC expressly states "WITHOUT RECOURSE" This language conclusively demonstrates LVNV purchased only disputed debt balances—not Credit One's alleged contract rights or arbitration provisions. **(Six Bills of Sale, EXHIBIT A)**

**B. Credit One Operated as SPV Servicer, Not Debt Owner**

Credit One Bank functioned as a Special Purpose Vehicle servicer. The debt was securitized and owned by third parties during the alleged default period. The ACC publication confirms it. More than 95% of Credit One's receivables are sold daily without recourse. **(EXHIBIT B)**

**C. February 4, 2026 Rescission Extinguished Any Contract**

Plaintiffs' certified rescission mailed February 4, 2026 terminated any possible contract prior to LVNV's alleged acquisition. **(See Exhibits attached to Affidavits)**

## STATEMENT OF FACTS

Plaintiffs respectfully opposes Defendants' Motion to Compel Arbitration. The arbitration clause invoked by Defendants is no longer enforceable because it was rescinded by Plaintiff, effective upon notice. Additionally, Defendants' underlying credit card agreement with Plaintiff is void ab initio due to material breaches of the Truth in Lending Act (TILA), failures to comply with Fair Credit Reporting Act (FCRA) requirements, and Defendants' failure to properly address billing errors and account inaccuracies. An arbitration clause cannot be severed from a fundamentally breached and rescinded transaction. Accordingly,

Defendants' Motion should be denied, and this matter should proceed to litigation on the merits.

1. Plaintiffs entered into a credit card agreement with Defendant Credit One Bank, N.A. ("Credit One"), which included an arbitration clause.

2. Credit One failed to provide clear and conspicuous Truth in Lending Act (TILA) disclosures as required by 15 U.S.C. § 1638 and Regulation Z, 12 C.F.R. § 1026.

3. Credit One failed to provide a reasonable response to Plaintiff's billing error notice and failed to make appropriate corrections to Plaintiff's account, in violation of 15 U.S.C. § 1666 (Fair Credit Billing Act).

4. Credit One failed to conduct a reasonable investigation of inaccurate account information as required by 15 U.S.C. § 1681s-2(b)(ii) under the Fair Credit Reporting Act (FCRA), and continued to report the account as accurate despite clear inaccuracies.

5. On January 30, 2025 Plaintiffs served a formal Notices of Rescission on Credit One pursuant to 15 U.S.C. § 1635 and Regulation Z, 12 C.F.R. § 1026.23, common law unilateral self-help rescission, rescinding the credit card agreement in its entirety, including all documents executed in connection therewith.

6. The rescission notice specifically identified the arbitration clause as part of the rescinded transaction, and provided that the rescission places the parties in status quo ante—their pre-contractual positions.

7. Plaintiff's rescission notice was effective upon receipt and automatically terminated the arbitration agreement, which cannot exist separately from the transaction that created it.

8. Defendant LVNV Funding, LLC acquired the debt as a purported debt buyer but lacks proper documentation of chain of title and standing to enforce the rescinded arbitration clause.

9. In this case, PPlaintiffs never undertook any obligation to LVNV or there is no promise, no assent, and no contract between the Plaintiffs and these debt buyers. Any alleged "obligation" to LVNV or RCS is based only on bills of

sale between financial institutions, to which Affiant was not a party to. Under basic common-law principles, including assumpsit, a stranger to such arrangements cannot claim that a consumer, such as Plaintiffs has promised to pay it or to arbitrate with it.

10. Affiant never reaffirmed any agreement to arbitrate, assumed any duty to LVNV or RCS, there is no basis in contract or in assumpsit to compel Affiant to arbitrate with these entities. "A contract requires mutual agreement between interested parties. Once Credit One sold accounts to SPV days after opening, the original relationship terminated. Legally binding modification requires all parties' consent via rider or new contract, and none exists.

11. Affiant promised Defendants LVNV and RCS nothing. Defendants lack arbitration enforcement power. Credit One surrendered rights to SPV before card delivery. No Affiant-LVNV, RCS contracts exist. Six 'WITHOUT RECOURSE' bills (Dkt. 21) confirm empty chain.

12.Affiant contends that Defendants cannot file motions to create jurisdiction they lack. LVNV and RSC holds no privity, no signed contracts from anu of the Plaintiffs, and no arbitration standing. Defendants Motion to compel serves only to evade merits of Affiant's claims. Six without recourse Bills (Dkt. 21) prove debt buyers cannot bootstrap arbitration rights. No motion creates jurisdiction where none exists.

13.Affiant disputed the alleged debt with LVNV and RCS, and made inquiries, which were met with continued collection, negative reporting to the CRA's, and with silence. **( Credit Reports EXHIBIT C)**

14.Affiant contends that Credit One' August 26, 2025 email proves SPV sale eliminated COB' arbitration rights before LVNV assignment of Affiant's account, resulting in no privity or right to enforce arbitration.

15.Affiant contends "Paige Hale's declaration fails FRE 602 personal knowledge requirement. As Resurgent paralegal, Hale testifies to LVNV/Resurgent records only— not Credit One's missing account origination or SPV sale Incompetent to authenticate non-existent COB to LVNV chain.

16. Fact, After each Plaintiff individually agreed to withdraw Unilateral 26(f) Report (due Feb 4, 2026; stricken Feb 3), Defendants waited until Feb 4, 2026 to file MTC (Dkt. 21) and Joint 26(f) (filed Feb 9), Defendants exploited Plaintiff Manzano' 1.5-hour drive burden by filing MTC (Feb 4) and late Joint 26(f) (Feb 9), securing discovery extension—proving calculated ambush forcing elderly pro se burden while gaming the docket calendar, proving calculated arbitration ambush post-26(f) maneuvering.

## THE ARBITRATION CLAUSE WAS EFFECTIVELY RESCINDED AND NO LONGER EXISTS AS AN ENFORCEABLE AGREEMENT

A. Legal Standard for Rescission

Under 15 U.S.C. § 1635, a consumer has the right to rescind a consumer credit transaction within a specified period when the creditor fails to make required TILA disclosures. Rescission is a remedy that voids the transaction ab initio and places the parties in status quo ante. When a consumer properly exercises the right of rescission, the entire transaction—including all documents and agreements executed in connection therewith—is terminated and becomes void.

**B.** The Arbitration Clause Cannot Be Severed from the Rescinded Transaction

An arbitration clause is not a standalone contract; it is a provision of the underlying transaction. When the underlying transaction is rescinded, the arbitration clause is rescinded with it. The clause has no independent existence apart from the contract that contains it. Defendants cannot cherry-pick the arbitration provision while the entire agreement is void due to Plaintiff's valid exercise of common law self help rescission rights.

## I. NO ARBITRATION AGREEMENT EXISTS

**C.** Plaintiff's Notice of Rescission Was Timely and Properly Served

An arbitration agreement, like any contract, requires the essential elements of a valid contract under Arkansas law: (1) competent parties; (2) subject matter; (3) legal consideration; (4) **mutual agreement**; and (5) **mutual obligation**. See

*Ark. Code Ann. § 16-108-206(c)*. Defendants have not produced evidence establishing mutual agreement to arbitration by all three Defendants.

On January 30, 2025, Plaintiffs served a formal Notice of Rescission on Credit One that explicitly rescinded the credit card agreement and all documents executed in connection therewith, including the arbitration clause. The notice cited the applicable statutory authority—15 U.S.C. § 1635 and Regulation Z, 12 C.F.R. § 1026.23—out of frustration and dred and stated that rescission was effective upon receipt. Rescission does not require court approval; it is a self-executing remedy under TILA. By operation of law, the arbitration clause ceased to exist upon delivery of the rescission notice.

"The common law self-help rescission doctrine is self-executing for material breach and duress, triggered by Credit One's failure to disclose material information directly affecting customers' financial well-being and trust."

## THE UNDERLYING CREDIT CARD AGREEMENT IS VOID AB INITIO DUE TO MATERIAL BREACHES OF TILA, FCRA, AND FAIR CREDIT BILLING ACT REQUIREMENTS

A. Credit One's Failure to Provide Adequate TILA Disclosures Breaches the Fundamental Contract.

TILA disclosures are not mere formalities; they are the foundation of the consumer credit agreement. 15 U.S.C. § 1638 requires creditors to provide clear and conspicuous disclosures of finance charges, annual percentage rates, payment terms, and other material terms before the consumer consents to the transaction.

Credit One's failure to provide adequate disclosures constitutes a material breach that voids the agreement. An arbitration clause cannot be enforced under a contract that is itself void due to Credit One' material breach and statutory violations.

B. Credit One's Failure to Address Billing Errors Breaches the Fair Credit Billing Act

Under 15 U.S.C. § 1666, when a consumer disputes a billing error or inaccuracy and sends a notice to the creditor, the creditor must acknowledge receipt and conduct a reasonable investigation within 30 days. Credit One received Plaintiff's billing error notice and failed to provide a reasonable response or make appropriate corrections to the account. This breach of the Fair Credit Billing Act goes to the heart of the creditor-consumer relationship and renders the entire agreement unenforceable.

C. Credit One's Failure to Conduct Reasonable FCRA Investigation Voids the Agreement

When an account contains clear inaccuracies and a consumer disputes them, the furnisher of credit information—in this case, Credit One—must conduct a reasonable investigation under 15 U.S.C. § 1681s-2(b). Credit One failed to conduct any reasonable investigation and continued to report the account as accurate despite documented inaccuracies. This willful or negligent violation of the FCRA constitutes a material breach that undermines the enforceability of the entire transaction and any provision within it.

## LVNV FUNDING LACKS STANDING TO ENFORCE AN ARBITRATION CLAUSE AND HAS NOT ESTABLISHED PROPER CHAIN OF TITLE

LVNV Funding is a debt buyer that purports to own the account. However, LVNV has not established proper chain of title or documented the transfer of the arbitration agreement from Credit One to itself. A debt buyer cannot enforce rights—including arbitration rights—that it does not possess. The arbitration clause was an agreement between Plaintiff and Credit One. LVNV's alleged assignment of the underlying debt does not automatically transfer Plaintiff's duty to arbitrate with an entity she never contracted with and whose ownership interest is undocumented.

## ARBITRATION CANNOT PROCEED WHILE CORE THRESHOLD ISSUES REMAIN UNRESOLVED

Even if an arbitration clause existed, threshold questions about the validity of the underlying agreement must be resolved before compelling arbitration. These issues include: (1) whether the agreement was properly formed; (2) whether material breaches have rendered it void; (3) whether rescission has terminated it; and (4) whether the parties actually agreed to arbitrate their dispute. These are questions of law for the court, not for an arbitrator, and they must be resolved in the litigation context before arbitration can be compelled.

Defendants' Evidence Incomplete Under Ark. R. Evid. 106**Defendants submit partial chain documents while plaintiffs possess all six bills of sale showing: (1) Credit One's prior material breach, (2) no consideration exchanged at

assignments, and (3) plaintiffs' timely rescission notices predating transfers. Selective omission requires complete chain consideration—defeating arbitration."

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court DENY Defendants' Motion to Compel Arbitration. The arbitration clause has been rescinded and no longer exists. The underlying agreement is void ab initio due to material statutory violations. LVNV Funding lacks standing to enforce rights it does not possess. This matter should proceed to litigation on the merits so that Plaintiff's valid claims for TILA, FCRA, and Fair Credit Billing Act violations can be heard and properly adjudicated.

**WHEREFORE,** Plaintiffs respectfully request that this Court:

1. DENY Defendants' Motion to Compel Arbitration in its entirety;
2. Declare the subject agreements rescinded, repudiated, and void ab initio;
3. Award Plaintiffs their costs and fees incurred opposing this motion;
4. Grant such other relief as the Court deems just and proper.

## VERIFICATION

The undersigned are over the age of 18 and competent to certify that the above statements are true, correct, complete and not misleading, to the best of their knowledge, except those statements that are based upon information and belief. The undersigned understand that a false statement in this Verified Complaint may subject them to penalties of perjury.

Respectfully submitted: Dated this 19th day of February, 2026


By, ______________________
Jacqueline Manzano
401 Paradise Heights Drive
Berryville, AR 72616
702-788-0599
Jmdesigns88@proton.me

By, ______________________
Alton Grisham
870-350-3185
AG-84proton.me@proton.me

By, ______________________
Pete Torrez
702-788-0637
ptorrez54@aol.com
*Plaintiffs, in proper person*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on February 19, 2026, a copy of the foregoing, **Plaintiffs Opposition to Defendants Motion to Compel Arbitration** was sent to the attorney of record, addressed to Samuel A. Morris, Burr & Forman, LLP, 222 Second Avenue South, Suite 2000, Nashville, TN 3720, via USPS First Class Mail.

Respectfully submitted: dated this 19TH day of February, 2026

By: [signature]

Jacqueline Manzano
401 Paradise Heights Drive
Berryville, AR 72616-
702-788-0599
Jmdesigns88@proton.me
*Plaintiff in proper person*

*/s/ Alton Grisham* [signature]
Alton Grisham
870-350-3185
AG-proton.me@proton.me
*Plaintiff in proper person*

*/s/ Pete Torrez* [signature]
Ptorrez54@aol.com
702-788-0637
*Plaintiff in proper person*

# EXHIBIT – A

**Transfer and Assignment**

Resurgent Acquisitions LLC ("RALLC"), without recourse, to the extent permitted by applicable law, hereby transfers, sells, assigns, conveys, grants and delivers to LVNV Funding LLC ("LVNV") all of its right, title and interest in and to the receivables and other assets (the "Assets") identified on Exhibit A, in the Receivable File dated August 04, 2025 delivered by Credit Asset Sales LLC on August 21, 2025 for purchase by RALLC on August 21, 2025. The transfer of the Assets included electronically stored business records.

Dated: **August 21, 2025**

Resurgent Acquisitions LLC
a Delaware Limited Liability Company

By: ______________________
Name: Jackson Walker
Title: Authorized Representative

Dated: **August 21, 2025**

LVNV Funding LLC
a Delaware Limited Liability Company

By: ______________________
Name: Dan Picciano
Title: Authorized Representative

**BILL OF SALE AND ASSIGNMENT OF RECEIVABLES FROM FNBM, LLC, TO CREDIT ASSET SALES LLC**

On **August 21, 2025**, FNBM, LLC ("Assignor"), for good and valuable consideration, the receipt of which is hereby acknowledged, hereby transfers, sells, assigns, conveys, grants and delivers to Credit Asset Sales LLC ("Assignee"), all of its rights, title and interest in and to (i) the receivables identified and specifically referenced for each of the accounts on an account level basis on the data file titled **08-2025 C&D Sale File** attached hereto and incorporated by reference as "Exhibit A"; and (ii) all claims or rights arising out of or relating to the receivables (hereinafter the "Receivables").

This Bill of Sale and Assignment of Receivables shall serve as evidence of ownership for any of the Receivables conveyed hereby.

**FNBM, LLC**

Julie Allen, Authorized Representative

With respect to information for the Receivables, MHC Receivables, LLC ("MHC") represents and warrants to Assignee that the business records conveyed to Assignee relating to the Receivables (the "Business Records"), are kept by MHC in the regular course of its business. It is in the regular course of business of MHC for an employee or an authorized representative with personal knowledge of the act, event, condition, or opinion (collectively "Event") to be recorded, to make the appropriate memorandum or recording of the Event at or reasonably near the time of the Event. Furthermore, Assignor represents and warrants to Assignee that the Business Records are materially complete and accurate, and thoroughly embody the information in Assignor's custody and control for the Receivables from their creation until the time of transfer to Assignee. These representations and warranties are intended to augment any other representations and warranties the parties may have in place and not supplant any other existing warranties and representations.

**MHC Receivables, LLC**

Steven Dasch, Authorized Representative

Done

**BILL OF SALE AND ASSIGNMENT OF RECEIVABLES FROM FNBM, LLC, TO CREDIT ASSET SALES LLC**

On **July 21, 2025**, FNBM, LLC ("Assignor"), for good and valuable consideration, the receipt of which is hereby acknowledged, hereby transfers, sells, assigns, conveys, grants and delivers to Credit Asset Sales LLC ("Assignee"), all of its rights, title and interest in and to (i) the receivables identified and specifically referenced for each of the accounts on an account level basis on the data file titled **07-2025 C&D Sale File** attached hereto and incorporated by reference as "Exhibit A"; and (ii) all claims or rights arising out of or relating to the receivables (hereinafter the "Receivables").

This Bill of Sale and Assignment of Receivables shall serve as evidence of ownership for any of the Receivables conveyed hereby.

**FNBM, LLC**

Jeremy Alcantar, Authorized Representative

With respect to information for the Receivables, MHC Receivables, LLC ("MHC") represents and warrants to Assignee that the business records conveyed to Assignee relating to the Receivables (the "Business Records"), are kept by MHC in the regular course of its business. It is in the regular course of business of MHC for an employee or an authorized representative with personal knowledge of the act, event, condition, or opinion (collectively "Event") to be recorded, to make the appropriate memorandum or recording of the Event at or reasonably near the time of the Event. Furthermore, Assignor represents and warrants to Assignee that the Business Records are materially complete and accurate, and thoroughly embody the information in Assignor's custody and control for the Receivables from their creation until the time of transfer to Assignee. These representations and warranties are intended to augment any other representations and warranties the parties may have in place and not supplant any other existing warranties and representations.

**MHC Receivables, LLC**

Steven Dasch, Authorized Representative

Done

**BILL OF SALE AND ASSIGNMENT OF ACCOUNTS FROM MHC RECEIVABLES, LLC TO CREDIT ASSET SALES LLC**

On **July 21, 2025,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, MHC Receivables, LLC ("Assignor"), hereby transfers, sells, assigns, conveys, grants and otherwise delivers to Credit Asset Sales LLC ("Assignee"), all of Assignór's, rights title and interest in and to (i) the charged-off accounts identified on an account level basis in the data file named **07-2025 C&D Sale File** (the "Computer File"), a copy of which is attached hereto and incorporated herein by reference as "Exhibit A"; and, (ii) certain related account level media or electronic copies thereof (including, but not limited to applications, statements, terms and condition), and (iii) all claims or rights arising out of or relating to each referenced account (collectively hereinafter the "Accounts") including, but not limited to, all claims and rights afforded each account by virtue of that account's corresponding terms and conditions.

With respect to information for the Accounts described in the related Computer File, Assignor represents and warrants to Assignee that the business records relating to: (i) the Accounts owned by Assignor; and (ii) the sale and assignment of Accounts by Assignor (collectively, the "Business Records"), are kept by Assignor in the regular course of its business. It is in the regular course of business of Assignor for an employee or an authorized representative with personal knowledge of the act, event, condition, or opinion (collectively "Event") to be recorded, to make the appropriate memorandum or recording at or reasonably near the time of the Event. Furthermore, Assignor represents and warrants to Assignee that the Business Records are materially complete and accurate and thoroughly embody the information in Assignor's custody and control for the Accounts listed in the Computer File from Assignor's receipt of those Accounts until the time of transfer to Assignee. These representations and warranties are intended to augment any other representations and warranties the parties may have in place and not supplant any other existing warranties and representations.

This Bill of Sale and Assignment of Accounts shall serve as evidence of ownership for any of the Accounts conveyed hereby.

**MHC Receivables, LLC**

Steven Dasch, Authorized Representative

Done

**BILL OF SALE AND ASSIGNMENT OF ACCOUNTS AND RECEIVABLES FROM CREDIT ASSET SALES LLC TO RESURGENT ACQUISITIONS LLC**

Credit Asset Sales LLC ("Seller"), the owner of certain accounts and associated receivables (hereinafter referred to collectively as "Purchased Accounts"), for value received and in accordance with the terms of the Purchase and Sale Agreement, by and between Seller and Resurgent Acquisitions LLC. ("Buyer"), dated as of **August 1, 2024** ("Agreement"), does hereby sell, assign and transfer to Buyer, its successors and assigns, all right, title and interest in and to the Purchased Accounts as described on the computer file named **07-2025 C&D Sale File** (the "Computer File"), a copy of which is attached hereto and incorporated herein by reference as "Exhibit A".

This Bill of Sale and Assignment of Accounts and Receivables is subject to the terms of the Agreement and is made without representations and warranties of any kind or character except as expressly stated in the Agreement, or as expressly stated below.

With respect to information for the Purchased Accounts described in the related Computer File, to the best of Seller's knowledge, Seller represents and warrants to Buyer that such information (i) is materially complete and accurate; (ii) constitutes Seller's own business records that pertain to the Purchased Accounts and accurately reflects in all material respects the information in Seller's database; (iii) was kept in the regular course of Seller's business; (iv) was made, entered or compiled in the regular course of business; (v) was recorded at or near the time the underlying activity occurred, by a person with knowledge of the data recorded; (vi) has been accurately maintained in Seller's database since it was recorded there; and (vii) it is the regular practice of Seller's business to maintain and compile such data.

This Bill of Sale and Assignment of Accounts and Receivables may be entered as evidence of ownership for any of the Purchased Accounts conveyed hereby.

**Closing date: July 21, 2025**

**Credit Asset Sales LLC**

[signature]

Michael Wiese, Authorized Representative

Done.

**BILL OF SALE AND ASSIGNMENT OF ACCOUNTS FROM CREDIT ONE BANK, N.A. TO MHC RECEIVABLES, LLC**

As of **July 31, 2025**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Credit One Bank, N.A. ("Assignor") has transferred, has sold, has assigned, has conveyed, has granted and has otherwise delivered to MHC Receivables, LLC ("Assignee"), all of Assignor's right, title and interest in and to (i) the charged-off credit card accounts identified on an account level basis in the data file named **08-2025 C&D Sale File** (the "Computer File"), a copy of which is attached hereto and incorporated herein by reference as "Exhibit A"; and, (ii) certain related account level media or electronic copies thereof (including, but not limited to applications, statements, terms and condition), and (iii) all claims or rights arising out of or relating to each account referenced on the Computer File (collectively hereinafter, the "Accounts") including, but not limited to, all claims and rights afforded each Account by virtue of that Account's corresponding terms and conditions.

The Accounts transferred under the terms of this Bill of Sale and Assignment of Accounts were each transferred to Assignee immediately following charge off for each applicable Account, as shown in the Computer File.

With respect to information for the Accounts, Assignor represents and warrants to Assignee that the business records conveyed to Assignee relating to: (i) the Accounts issued by Assignor; and (ii) the sale and assignment of Accounts by Assignor (collectively, the "Business Records"), are kept by Assignor in the regular course of its business. It is in the regular course of business of Assignor for an employee or an authorized representative with personal knowledge of the act, event, condition, or opinion (collectively "Event") to be recorded, to make the appropriate memorandum or recording of the Event at or reasonably near the time of the Event. Furthermore, Assignor represents and warrants to Assignee that the Business Records are materially complete and accurate, and thoroughly embody the information in Assignor's custody and control for the Accounts from their creation until the time of transfer to Assignee. These representations and warranties are intended to augment any other representations and warranties the parties may have in place and not supplant any other existing warranties and representations.

This Bill of Sale and Assignment of Accounts shall serve as evidence of ownership for the Accounts conveyed hereby and shall serve as an acknowledgment, as ratification, and as evidence of the intent of the parties to transfer the Accounts.

**CREDIT ONE BANK, N.A.**

Michael Wiese
Vice President

# EXHIBIT – B

Joinder Plaintiffs - Opposition to Motion to Compel Arbitration and Stay Dkt 21 and 24

# PUBLIC DISCLOSURE

January 31, 2022

# COMMUNITY REINVESTMENT ACT PERFORMANCE EVALUATION

Credit One Bank, National Association
Charter Number: 20291
6801 South Cimarron Road Las Vegas, NV 89113

**Office of the Comptroller of the Currency**
Midsize Bank Supervision 400 7th St. SW, Suite 3E-218 Mail Stop 10E-8E-11
Washington, D.C. 20219

## Page 2 of the Report

Credit One is a wholly-owned subsidiary of Credit One Financial (COF). COF is an S-Corporation affiliated with Sherman Financial Group, LLC (SFG) through common beneficial ownership. SFG, a diversified consumer finance company, is privately held and located in Charleston, SC.

Credit One's current portfolio consists of unsecured credit cards that were issued to sub-prime and prime borrowers. The emphasis of the current marketing strategy remains in keeping with its long-embraced goal of providing a viable credit vehicle to troubled borrowers to establish and repair their credit. Customer contacts for these products occur over the telephone, through the mail, and through the Internet. **More than 95 percent of the bank's receivables are sold daily without recourse.**

# Description of Institution

Credit One Bank, N.A. (Credit One or bank) is a technology and data-driven financial services company offering a full range of consumer credit card products. Credit One, formerly First National Bank of Marin (FNBM), is headquartered in Las Vegas, Nevada. The bank has no branches. The bank began operations as FNBM in San Rafael, California in July 1984 as a full-service bank. FNBM maintained a wide range of products until 1995 when it began focusing primarily on one type of product, a partially secured credit card. FNBM received a Limited Purpose Designation, Competitive Equality Banking Act (CEBA) credit card bank, from the OCC in June 1996. CEBA banks are restricted to credit card operations, maintain only one office, and do not accept demand deposits or savings or time deposits of less than $100,000 (other than to secure extensions of credit). The bank moved from San Rafael, California to Las Vegas, Nevada in November 1998. Effective February 1, 2006, FNBM changed its name to Credit One.

Credit One is a wholly-owned subsidiary of Credit One Financial (COF). COF is an S-Corporation affiliated with Sherman Financial Group, LLC (SFG) through common beneficial ownership. SFG, a diversified consumer finance company, is privately held and located in Charleston, SC.

Credit One's current portfolio consists of unsecured credit cards that were issued to sub-prime and prime borrowers. The emphasis of the current marketing strategy remains in keeping with its long-embraced goal of providing a viable credit vehicle to troubled borrowers to establish and repair their credit. Customer contacts for these products occur over the telephone, through the mail, and through the Internet. More than 95 percent of the bank's receivables are sold daily without recourse.

**Table 1: Financial Information (000s)**

| | Year-end 2018 | Year-end 2019 | Year-end 2020 | YTD 9/30/2021 | Average for Evaluation Period |
|---|---|---|---|---|---|
| Tier 1 Capital | 192,331 | 264,253 | 321,934 | 341,300 | 279,955 |
| Total Income | 690,898 | 844,244 | 827,198 | 752,514 | 778,714 |
| Net Operating Income | 176,905 | 219,923 | 247,369 | 249,496 | 223,423 |
| Total Assets | 385,194 | 639,161 | 803,193 | 878,394 | 676,486 |
| Pass Through Receivables /Managed Assets | 6,835,372 | 7,783,060 | 6,811,592 | 7,307,190 | 7,184,304 |

Source: Consolidated Report of Condition and Income and bank reported data. Annualized data reported.

# EXHIBIT – C

Joinder Plaintiffs - Opposition to Motion to Compel Arbitration and Stay Dkt 21 and 23

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

**JACQUELINE MANZANO, ALTON GRISHAM, and PETE TORREZ,**

**Plaintiffs,**

**v.**

**CREDIT ONE BANK, N.A, RESURGENT CAPITAL SERVICES, LP, and LVNV FUNDING,**

**Defendants.**

**CIVIL ACTION NO. 3:25-cv-03072**

**DECLARATION OF MICHAEL WIESE**

Pursuant to 28 U.S.C. § 1746, I, Michael Wiese, declare as follows:

1. I am over twenty-one years of age and I am competent to testify regarding the matters in this Declaration based on my employment with Credit One Bank, N.A. ("Credit One").

2. I currently hold the position of Vice President of Collections and Recovery for Credit One, a national bank with its headquarters in Las Vegas, Nevada. As part of my responsibilities, I work closely with Credit One's customer records, and I have reviewed and have personal knowledge of the facts asserted below in relation to cardholders Jacqueline Manzano ("Manzano"), Alton Grisham ("Grisham"), and Pete Torrez ("Torrez"). I also have personal knowledge of how

customers apply for lines of credit with Credit One, and how they did so in 2024. Through my employment, I am also familiar with how Credit One provides credit cards and card agreements to its cardholders.

3. I am familiar with the recordkeeping practices of Credit One. The documents attached hereto are true and correct copies of the original business records maintained by Credit One. These records are kept in the course of the regularly conducted business activity of Credit One and were prepared in the ordinary course of business at or near the time of the act or event reported thereon, by a person or persons with knowledge of and a business duty to record or transmit the matters contained therein.

4. The facts set forth herein are based upon my personal knowledge and review of business records maintained by Credit One in its ordinary course of business.

**The Manzano Account**

5. Based on my review of Credit One's business records, Manzano completed an online application for a credit card account with Credit One. Following review and approval of Manzano's credit application, Credit One issued an account to Manzano ending in -2393 (the "Manzano Account"). The Manzano Account was opened on or about February 18, 2024, and the physical credit card for the Manzano Account was mailed to Manzano at the address listed on her credit application, 401

Paradise Heights Dr, Berryville, AR 72616. Enclosed with the credit card was the Credit One Card Agreement (the "Manzano Card Agreement") governing the Manzano Account, as well as instructions indicating how to activate the credit card. A true and correct copy of the Manzano Card Agreement is attached hereto as **Exhibit 1**.

6. It is Credit One's standard practice to note in a customer's account records if mail is returned as undeliverable. Credit One's records for the Manzano Account do not indicate that the Manzano Card Agreement was returned to Credit One as undeliverable. Rather, Manzano activated the credit card that was mailed to her with the Card Agreement on February 26, 2024.

7. Manzano made several charges on the Manzano Account throughout 2024. Attached hereto as **Exhibit 2** is a true and correct copy of statements for the Manzano Account that were provided to Manzano and show charges she incurred using the credit card for the Manzano Account.

8. It is Credit One's practice to notate an account when a customer contacts Credit One to reject the Arbitration Agreement contained in the Card Agreement. Credit One's business records for the Manzano Account do not contain any record of Manzano ever contacting Credit One to reject the Arbitration Agreement.

9. As of July 31, 2025, Credit One assigned all rights, title, and interest in the Manzano Account, including the right to enforce the Arbitration Agreement in the Manzano Card Agreement, to MHC Receivables, LLC. Attached hereto as **Exhibit 3** is a true and correct copy of the Bill of Sale and Assignment of the Manzano Account from Credit One to MHC Receivables, LLC.

10. On August 25, 2025, Credit One sent Manzano correspondence informing her that the Manzano Account had been sold and assigned to LVNV Funding, LLC. This correspondence also advised Manzano that "all future inquiries regarding this Account should be directed to LVNV Funding, LLC." Attached hereto as **Exhibit 4** is a true and correct copy of this correspondence.

**The Grisham Account**

11. Based on my review of Credit One's business records, Grisham completed an online application for a credit card account with Credit One. Following review and approval of Grisham's credit application, Credit One issued an account to Grisham ending in -0181 (the "Grisham Account"). The Grisham Account was opened on or about March 12, 2024, and the physical credit card for the Grisham Account was mailed to Grisham at the address listed on his credit application, 401 Paradise Heights Dr., Berryville, AR 72616. Enclosed with the credit card was the Credit One Card Agreement (the "Grisham Card Agreement") governing the Grisham Account, as well as instructions indicating how to activate the credit card.

A true and correct copy of the Grisham Card Agreement is attached hereto as **Exhibit 5**.

12. It is Credit One's standard practice to note in a customer's account records if mail is returned as undeliverable. Credit One's records for the Grisham Account do not indicate that the Grisham Card Agreement was returned to the Credit One as undeliverable. Rather, Grisham activated the credit card that was mailed to him with the Card Agreement on March 20, 2024.

13. Grisham made several charges on the Grisham Account throughout 2024. Attached hereto as **Exhibit 6** is a true and correct copy of statements for the Grisham Account that were mailed to Grisham and show charges he incurred using the credit card for the Grisham Account.

14. It is Credit One's practice to notate an account when a customer contacts Credit One to reject the Arbitration Agreement contained in the Card Agreement. Credit One's business records for the Grisham Account do not contain any record of Grisham ever contacting Credit One to reject the Arbitration Agreement.

15. As of May 31, 2025, Credit One Bank assigned all rights, title, and interest in the Grisham Account, including the right to enforce the Arbitration Agreement in the Grisham Card Agreement, to MHC Receivables, LLC. Attached

hereto as **Exhibit 7** is a true and correct copy of the Bill of Sale and Assignment of the Grisham Account from Credit One to MHC Receivables, LLC.

16. On July 9, 2025, Credit One sent Grisham correspondence informing him that the Grisham Account had been sold and assigned to LVNV Funding, LLC. This correspondence also advised Grisham that "all future inquiries regarding this Account should be directed to LVNV Funding, LLC." Attached hereto as **Exhibit 8** is a true and correct copy of this correspondence.

**The Torrez Account**

17. Based on my review of Credit One's business records, Torrez completed an online application for a credit card account with Credit One. Following review and approval of Torrez's credit application, Credit One issued an account to Torrez ending in -7755 (the "Torrez Account"). The Torrez Account was opened on or about March 26, 2024, and the physical credit card for the Torrez Account was mailed to Torrez at the address listed on his credit application, 401 Paradise Heights Dr., Berryville, AR 72616. Enclosed with the credit card was the Credit One Card Agreement (the "Torrez Card Agreement") governing the Torrez Account, as well as instructions indicating how to activate the credit card. A true and correct copy of the Torrez Card Agreement is attached hereto as **Exhibit 9**.

18. It is Credit One's standard practice to note in a customer's account records if mail is returned as undeliverable. Credit One's records for the Torrez

Account do not indicate that the Torrez Card Agreement was returned to the Credit One as undeliverable. Rather, Credit One activated the credit card that was mailed to him along with the Card Agreement on or about May 1, 2024.

19. Torrez made several charges on the Torrez Account throughout 2024. Attached hereto as **Exhibit 10** is a true and correct copy of statements for the Torrez Account that were mailed to Torrez and show charges he incurred using the credit card for the Torrez Account.

20. It is Credit One's practice to notate an account when a customer contacts Credit One reject the Arbitration Agreement contained in the Card Agreement. Credit One's business records for the Torrez Account do not contain any record of Torrez ever contacting Credit One to reject the Arbitration Agreement.

21. As of July 21, 2025, Credit One Bank assigned all rights, title, and interest in the Torrez Account, including the right to enforce the Arbitration Agreement in the Torrez Card Agreement, to MHC Receivables, LLC. Attached hereto as **Exhibit 11** is a true and correct copy of the Bill of Sale and Assignment of the Torrez Account from Credit One to MHC Receivables, LLC.

22. On July 28, 2025, Credit One sent Torrez correspondence informing him that the Torrez Account had been sold and assigned to LVNV Funding, LLC. This correspondence also advised Torrez that "all future inquiries regarding this

Account should be directed to LVNV Funding, LLC." Attached hereto as **Exhibit 12** is a true and correct copy of this correspondence.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: January 29, 2026.

Michael Wiese

# EXHIBIT – D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**EL DORADO DIVISION**

**JACQUELINE MANZANO, ALTON GRISHAM, and PETE TORREZ,**

**Plaintiffs,**

**v.**

**CREDIT ONE BANK, N.A, RESURGENT CAPITAL SERVICES, LP, and LVNV FUNDING,**

**Defendants.**

**CIVIL ACTION NO. 3:25-cv-03072**

**DECLARATION OF E. Paige Hale**

Pursuant to 28 U.S.C. § 1746, I, E. Paige Hale, declare as follows:

1. I am over twenty-one years of age, I am competent to make this Declaration, and I am authorized to make this Declaration on behalf of LVNV Funding LLC ("LVNV"). I am currently employed as a Paralegal at Resurgent Capital Services, LP ("Resurgent"). Resurgent is the servicer and authorized agent for LVNV and manages the accounts currently at issue. In my job capacity, I am a designated Authorized ~~Representative for LVNV~~. I am responsible for the team of records custodians maintaining the business records of LVNV. I make this Declaration from my own personal knowledge of the matters set forth herein or from personal knowledge gained from my review of the business records of LVNV, which

were made by, or from information transmitted by, a person with knowledge of the events described therein, at or near the time of the event described, and which are kept in the ordinary course of the regularly conducted business activity of such person and LVNV, and for which it is the regular practice of that business activity to make such records.

2. I am familiar with LVNV's record keeping systems and practices, including the business procedures and policies of LVNV with respect to credit card accounts purchased in LVNV's name and the records maintained by Resurgent on behalf of LVNV in association with the same. LVNV regularly relies upon records of this type for their accuracy. In particular, I have personally reviewed those records pertaining to the accounts of Jacqueline Manzano ("Manzano"), Alton Grisham ("Grisham"), and Pete Torrez ("Torrez"). If called as a witness, I could and would testify competently to the matters set forth in this Declaration.

3. Some of the business records I reviewed, including some of the business records attached hereto, were created by businesses other than LVNV. On information and belief, all of these records, including the records attached hereto, were made by, or from information transmitted by, a person with knowledge of the events described therein, at or near the time of the event described, were kept in the ordinary course of the regularly conducted business activity of such persons, and it is the regular practice of those business activities to make and rely upon such records.

These records have been incorporated into the business records of LVNV and are routinely relied upon by LVNV in conducting its business.

4. All of the documents attached hereto are business records of LVNV that are maintained on LVNV's behalf by Resurgent and were kept and maintained in the course of LVNV's regularly conducted business activity.

**The Manzano Account**

5. Pursuant to a Declaration of Account Transfer dated August 21, 2025, Resurgent Acquisitions LLC ("RALLC") sold, assigned, and conveyed to LVNV all rights, title, and interests of RALLC to a pool of accounts. The entire list of the assigned accounts is too voluminous to list herein. A true and correct copy of the Declaration of Account Transfer is attached hereto as **Exhibit 1**.

6. After assignment by RALLC, LVNV currently owns all rights, title, and interest in the assigned accounts, including the account of Manzano that originated with Credit One Bank, N.A. ("Credit One") and was identified by Credit One as account number XXXX XXXX XXXX 2393 (the "Manzano Account").

7. As part of the sale of the pool of accounts to LVNV, RALLC transferred electronic records and other records of the pool of accounts to LVNV. The electronic records included a data file identifying all of the assigned accounts. The file contains data pertaining to thousands of accounts and is not in a format that can be feasibly provided to the Court.

8. I personally accessed and reviewed the electronic data containing the accounts assigned by RALLC to LVNV pursuant to the Declaration of Account Transfer in order to locate information for the Manzano Account and to ensure that the Manzano Account was in fact among those assigned as part of the pool of assigned accounts. Attached hereto as **Exhibit 2** is true and correct copy of the data pertaining to the Manzano Account taken from the original data file received from the sale of the Manzano Account. The data shows that the Manzano Account had an account number ending in -2393 and that it was opened on February 18, 2024. *See* Ex. 2 at 1, 3.

9. As part of the assignment of the Manzano Account to LVNV, LVNV was provided with (a) the ownership chain of the Manzano Account which noted previous sales (attached hereto as **Exhibit 3**); (b) billing statements and a transaction history for the Manzano Account (attached hereto as **Exhibit 4**); and (c) the Credit One Card Agreement governing the Manzano Account (attached hereto as **Exhibit 5**).

10. The pool of accounts assigned by RALLC to LVNV on August 21, 2025, contained accounts originated by Credit One. *See* Ex. 3 at 1. Those accounts, including the Manzano Account, were all originated by Credit One, and were assigned to MHC Receivables, LLC on July 31, 2025. *See id.* Credit One was the

servicer of all of the accounts transferred to LVNV from their origination until July 31, 2025. *See id.*

11. RALLC obtained ownership of the pool of accounts that it assigned to LVNV by being assigned them from Credit Asset Sales LLC on August 21, 2025. *See* Ex. 3 at 11. Credit Asset Sales LLC was assigned ownership of the pool of accounts, including the Manzano Account, from MHC Receivables, LLC on August 21, 2025. *See* Ex. 3 at 9. MHC Receivables LLC was assigned ownership of the pool of accounts, including the Manzano Account, from Credit One on July 31, 2025. *See* Ex. 3 at 1.

12. Likewise, RALLC obtained ownership of the pool of receivables that it assigned to LVNV by being assigned them from Credit Asset Sales LLC on August 21, 2025. *See* Ex. 3 at 11. Credit Asset Sales LLC was assigned ownership of the pool of receivables, including those associated with the Manzano Account, from FNBM, LLC on August 21, 2025. *See* Ex. 3 at 7. FNBM, LLC was assigned ownership of the pool of receivables, including those associated with the Manzano Account, from MHC Receivables, LLC on August 21, 2025. *See* Ex. 3 at 5. MHC Receivables, LLC was assigned ownership of the pool of receivables, including those associated with the Manzano Account, from Credit One on July 31, 2025. *See* Ex. 3 at 3.

13. As reflected in the electronic records transferred by RALLC, Manzano used the Manzano Account by making purchases on the Manzano Account after it was opened. *See* Ex. 4.

14. The records transferred by RALLC upon assignment of the Manzano Account to LVNV included the Credit One Card Agreement that governed the Manzano Account (the "Manzano Card Agreement") at the time of the Manzano Account's origination and at the time it was assigned to LVNV. *See* Ex. 5. The Manzano Card Agreement includes an Arbitration Agreement. *See id.* at 6-8.

**The Grisham Account**

15. Pursuant to a Declaration of Account Transfer dated June 17, 2025, RALLC sold, assigned, and conveyed to LVNV all rights, title, and interests of RALLC to a pool of accounts. The entire list of the assigned accounts is too voluminous to list herein. A true and correct copy of the Declaration of Account Transfer is attached hereto as **Exhibit 6**.

16. After assignment by RALLC, LVNV currently owns all rights, title, and interest in the assigned accounts, including the account of Grisham that originated with Credit One and was identified by Credit One as account number XXXX XXXX XXXX 0181 (the "Grisham Account").

17. As part of the sale of the pool of accounts to LVNV, RALLC transferred electronic records and other records of the pool of accounts to LVNV.

The electronic records included a data file identifying all of the assigned accounts. The file contains data pertaining to thousands of accounts and is not in a format that can be feasibly provided to the Court.

18. I personally accessed and reviewed the electronic data containing the accounts assigned by RALLC to LVNV pursuant to the Declaration of Account Transfer in order to locate information for the Grisham Account and to ensure that the Grisham Account was in fact among those assigned as part of the pool of assigned accounts. Attached hereto as **Exhibit 7** is true and correct copy of the data pertaining to the Grisham Account taken from the original data file received from the sale of the Grisham Account. The data shows that the Grisham Account had an account number ending in -0181 and that it was opened on March 12, 2024. *See* Ex. 7 at 1, 3.

19. As part of the assignment of the Grisham Account to LVNV, LVNV was provided with (a) the ownership chain of the Grisham Account which noted previous sales (attached hereto as **Exhibit 8**); (b) billing statements and a transaction history for the Grisham Account (attached hereto as **Exhibit 9**); and (c) the Credit One Card Agreement governing the Grisham Account (attached hereto as **Exhibit 10**).

20. The pool of accounts assigned by RALLC to LVNV on June 17, 2025, contained accounts originated by Credit One. *See* Ex. 8 at 1. Those accounts,

including the Grisham Account, were all originated by Credit One, and were assigned to MHC Receivables, LLC on May 31, 2025. *See id.* Credit One was the servicer of all of the accounts transferred to LVNV from their origination until May 31, 2025. *See id.*

21. RALLC obtained ownership of the pool of accounts that it assigned to LVNV by being assigned them from Credit Asset Sales LLC on June 17, 2025. *See* Ex. 8 at 11. Credit Asset Sales LLC was assigned ownership of the pool of accounts, including the Grisham Account, from MHC Receivables, LLC on June 17, 2025. *See* Ex. 8 at 9. MHC Receivables LLC was assigned ownership of the pool of accounts, including the Grisham Account, from Credit One on May 31, 2025. *See* Ex. 8 at 1.

22. Likewise, RALLC obtained ownership of the pool of receivables that it assigned to LVNV by being assigned them from Credit Asset Sales LLC on June 17, 2025. *See* Ex. 8 at 11. Credit Asset Sales LLC was assigned ownership of the pool of receivables, including those associated with the Grisham Account, from FNBM, LLC on June 17, 2025. *See* Ex. 8 at 7. FNBM, LLC was assigned ownership of the pool of receivables, including those associated with the Grisham Account, from MHC Receivables, LLC on June 17, 2025. *See* Ex. 8 at 5. MHC Receivables, LLC was assigned ownership of the pool of receivables, including those associated with the Grisham Account, from Credit One on May 31, 2025. *See* Ex. 8 at 3.

23. As reflected in the electronic records transferred by RALLC, Grisham used the Grisham Account by making purchases on the Grisham Account after it was opened. *See* Ex. 9.

24. The records transferred by RALLC upon assignment of the Grisham Account to LVNV included the Credit One Card Agreement that governed the Grisham Account (the "Grisham Card Agreement") at the time of the Grisham Account's origination and at the time it was assigned to LVNV. *See* Ex. 10. The Grisham Card Agreement includes an Arbitration Agreement. *See id.* at 6-8.

**The Torrez Account**

25. Pursuant to a Declaration of Account Transfer, RALLC sold, assigned, and conveyed to LVNV all rights, title, and interests of RALLC to a pool of accounts. The entire list of the assigned accounts is too voluminous to list herein. A true and correct copy of the Declaration of Account Transfer is attached hereto as **Exhibit 11**.

26. After assignment by RALLC, LVNV currently owns all rights, title, and interest in the assigned accounts, including the account of Torrez that originated with Credit One and was identified by Credit One as account number XXXX XXXX XXXX 7755 (the "Torrez Account").

27. As part of the sale of the pool of accounts to LVNV, RALLC transferred electronic records and other records of the pool of accounts to LVNV.

The electronic records included a data file identifying all of the assigned accounts. The file contains data pertaining to thousands of accounts and is not in a format that can be feasibly provided to the Court.

28. I personally accessed and reviewed the electronic data containing the accounts assigned by RALLC to LVNV pursuant to the Declaration of Account Transfer in order to locate information for the Torrez Account and to ensure that the Torrez Account was in fact among those assigned as part of the pool of assigned accounts. Attached hereto as **Exhibit 12** is true and correct copy of the data pertaining to the Torrez Account taken from the original data file received from the sale of the Torrez Account. The data shows that the Torrez Account had an account number ending in -7755 and that it was opened on March 26, 2024. *See* Ex. 12 at 1, 3.

29. As part of the assignment of the Torrez Account to LVNV, LVNV was provided with (a) the ownership chain of the Torrez Account which noted previous sales (attached hereto as **Exhibit 13**); (b) billing statements and a transaction history for the Torrez Account (attached hereto as **Exhibit 14**); and (c) the Credit One Card Agreement governing the Torrez Account (attached hereto as **Exhibit 15**).

30. The pool of accounts assigned by RALLC to LVNV contained accounts originated by Credit One. *See* Ex. 13 at 1. Those accounts, including the Torrez Account, were all originated by Credit One, and were assigned to MHC Receivables,

LLC on June 30, 2025. *See id.* Credit One was the servicer of all of the accounts transferred to LVNV from their origination until June 30, 2025. *See id.*

31. RALLC obtained ownership of the pool of accounts that it assigned to LVNV by being assigned them from Credit Asset Sales LLC on July 21, 2025. *See* Ex. 13 at 11. Credit Asset Sales LLC was assigned ownership of the pool of accounts, including the Torrez Account, from MHC Receivables, LLC on July 21, 2025. *See* Ex. 13 at 9. MHC Receivables LLC was assigned ownership of the pool of accounts, including the Torrez Account, from Credit One on June 30, 2025. *See* Ex. 13 at 1.

32. Likewise, RALLC obtained ownership of the pool of receivables that it assigned to LVNV by being assigned them from Credit Asset Sales LLC on July 21, 2025. *See* Ex. 13 at 11. Credit Asset Sales LLC was assigned ownership of the pool of receivables, including those associated with the Torrez Account, from FNBM, LLC on July 21, 2025. *See* Ex. 13 at 7. FNBM, LLC was assigned ownership of the pool of receivables, including those associated with the Torrez Account, from MHC Receivables, LLC on July 21, 2025. *See* Ex. 13 at 5. MHC Receivables, LLC was assigned ownership of the pool of receivables, including those associated with the Torrez Account, from Credit One on June 30, 2025. *See* Ex. 13 at 3.

33. As reflected in the electronic records transferred by RALLC, Torrez used the Torrez Account by making purchases on the Torrez Account after it was opened. *See* Ex. 14.

34. The records transferred by RALLC upon assignment of the Torrez Account to LVNV included the Credit One Card Agreement that governed the Torrez Account (the "Torrez Card Agreement") at the time of the Torrez Account's origination and at the time it was assigned to LVNV. *See* Ex. 15. The Torrez Card Agreement includes an Arbitration Agreement. *See id.* at 6-8.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: February 3, 2026.

E. Paige Hale