# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
### EL DORADO DIVISION

JACQUELINE MANZANO,
ALTON GRISHAM, and
PETE TORREZ,

        Plaintiffs,

v.

CREDIT ONE BANK, N.A,
RESURGENT CAPITAL
SERVICES, LP, and
LVNV FUNDING,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CIVIL ACTION NO. 3:25-cv-03072**

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY

Defendants Credit One Bank, N.A. ("COB"), Resurgent Capital Services L.P. ("Resurgent"), and LVNV Funding LLC ("LVNV") (collectively, "Defendants"), by and through their undersigned counsel, submit the following Reply Brief in support of their Motion to Compel Arbitration and to Stay (the "Motion") the claims asserted by Plaintiffs Jacqueline Manzano, Alton Grisham, and Pete Torrez (collectively, "Plaintiffs").

## I. INTRODUCTION

In their filings in opposition to arbitration (collectively, the "Responses"), (Docs. 27, 31), Plaintiffs admit that they entered into the Card Agreements

65853407 v1

**Exhibit A**

governing their respective COB credit card accounts (the "Accounts") and concede that the Card Agreements contain identical arbitration provisions (the "Arbitration Agreement"). Plaintiffs also do not contest that their claims fall within the Arbitration Agreement's scope and, notably, do not deny any of the facts underpinning Defendants' Motion.

Instead, Plaintiffs argue that the evidence provided in support of Defendants' Motion is inadmissible and (somehow) fails to set forth the complete assignment chain of Plaintiffs' Accounts from COB to LVNV. Plaintiffs further contend they extinguished any obligation to arbitrate through "unilateral self-help rescission" of the Card Agreements, in addition to a smattering of assertions regarding the language of the assignment documents and the purported unconscionability of the Arbitration Agreement. But Plaintiffs' evidentiary objections are baseless and, as discussed in Defendants' Motion, any alleged "rescission" of the Card Agreements is a matter that must be heard by the arbitrator rather than this Court. And other than fictive legal principles and misapprehensions of inapplicable authority, Plaintiffs offer nothing in support of their challenges to arbitration. Accordingly, the Court should grant Defendants' Motion, compel Plaintiffs' claims to individual arbitration, and stay these proceedings pending the completion of arbitration.

65853407 v1

2

## II. ARGUMENT

### A.    Plaintiffs' Evidentiary Objections Are Without Merit.

In their Responses, Plaintiffs admit they "entered into a credit card agreement with" COB, "which included an arbitration clause." (Doc. 27 at 3.) Yet in their affidavits—which largely regurgitate the arguments set forth in their Responses—Plaintiffs contend that the Declaration of Michael Wiese ("Wiese") submitted with Defendants' Motion "is not relevant and is inadmissible hearsay" because "Wiese has no personal knowledge as to whether or not [Plaintiffs] promised to pay under any certain terms, or that [COB] ever lent anything to [Plaintiffs]."[1] (Doc. 28 ¶ 6; Doc. 29 ¶ 5; Doc. 30 ¶ 8.)

Putting aside that Plaintiffs' assertions are legal arguments inappropriate to set forth in an affidavit, Wiese gained the requisite personal knowledge (and thus demonstrated his competency to testify) through his personal "review of [the] business records maintained by" COB that are attached to his Declaration. (Doc. 22-1 ¶¶ 2, 4.) Further, the accompanying exhibits are admissible under Fed. R. Evid. 803(6), as Wiese is an authorized representative of COB and avers that the exhibits "are true and correct copies of the original business records maintained by" COB

---

[1] Plaintiffs also assert that the Declaration of E. Paige Hale ("Hale") "fails FRE 602['s] personal knowledge requirement" because "Hale testifies to LVNV/Resurgent records only." (Doc. 27 at 5.) But this ignores that Defendants' Motion is also supported by Wiese's Declaration, in which he offers testimony on COB's behalf and authenticates COB's records. (*See* Doc. 22-1.)

that "were prepared in the ordinary course of business at or near the time of the act or event reported thereon, by a person or persons with knowledge of and a business duty to record or transmit the matters contained therein." (*Id.* ¶¶ 2-3.) And in his Declaration, Wiese attests these records showed that each Plaintiff completed an online application for a COB credit card account, that COB mailed a physical credit card with the applicable Card Agreement to each Plaintiff, that no Plaintiff rejected arbitration, and that each Plaintiff incurred charges and made payments on his or her card. (*Id.* ¶¶ 5-8, 11-14, 17-20.) Accordingly, Wiese's Declaration and the attached business records are "proper evidence that [Plaintiffs] w[ere] offered the contractual documents and that [they] accepted them by using the credit card[s]."[2] *See Pierce v. Plains Com. Bank*, No. 11-01222-CV-W-BP, 2012 WL 5992730, at *2 (W.D. Mo. Nov. 29, 2012) (citing Fed. R. Evid. 406, 803(6), 803(7)) (holding that virtually identical testimony was sufficient to demonstrate the existence of a valid arbitration agreement); *see also Klosterman v. Discover Prods. Inc.*, 752 F. Supp. 3d 470, 477 (E.D. Pa. 2024) (same).

---

[2] To the extent Plaintiffs argue that the Card Agreements are themselves hearsay, a contract is a "verbal act" with "legal significance . . . independent of the truth of any statement contained in it," not an assertion. *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994). As such, "[t]he admission of a contract to prove the operative fact of that contract's existence thus cannot be the subject of a valid hearsay objection. To introduce a contract, a party need only authenticate it." *Id.*; *see also Ohio Cas. Ins. Co. v. Beall*, No. 3:23-CV-00060-TES, 2024 WL 3993851, at *5 (M.D. Ga. Aug. 29, 2024) ("[A] contract is not hearsay when it is offered to prove the legally operative fact that an agreement existed.").

Plaintiffs also assert that "Defendants' [e]vidence [is] [i]ncomplete [u]nder Ark. R. Evid. 106," arguing that Defendants have only "submit[ted] partial chain documents while [P]laintiffs possess all six bills of sale." (Doc. 27 at 9.) However, the Arkansas Rules of Evidence are inapplicable in these proceedings. *See Sprynczynatyk v. Gen. Motors Corp.*, 771 F.2d 1112, 1122 (8th Cir. 1985) ("[I]ssues of admissibility of evidence are questions of federal law."). Moreover, Ark. R. Evid. 106 merely provides that "[w]henever a writing . . . is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing . . . which in fairness ought to be considered contemporaneously with it." Plaintiffs have not sought to introduce some "other part" or "other writing," though, and simply attach to their Responses copies of some of the assignment documents filed with Defendants' Motion. (*See* Doc. 27 at 14-19.) If Plaintiffs instead contend that Defendants have not provided documentary evidence of the complete assignment chain for the Accounts from COB to LVNV, Hale's Declaration demonstrates that each Plaintiff's Account was (1) originated with COB; (2) assigned by COB to MHC Receivables, LLC; (3) assigned by MHC Receivables, LLC to Credit Asset Sales LLC; (4) assigned by Credit Asset Sales LLC to Resurgent Acquisitions LLC; and (5) assigned by Resurgent Acquisitions LLC to LVNV. (*See* Doc. 22-2 ¶¶ 5-34 & Exs. 3, 8 and 13 thereto.) Likewise, the receivables associated with each Account were (1) assigned by COB to MHC Receivables, LLC;

(2) assigned by MHC Receivables, LLC to FNBM, LLC; (3) assigned by FNBM, LLC to Credit Asset Sales LLC; (4) assigned by Credit Asset Sales LLC to Resurgent Acquisitions LLC; and (5) assigned by Resurgent Acquisitions LLC to LVNV. (*Id.*) Plaintiffs' challenges to the admissibility or sufficiency of Defendants' evidence accordingly fail.

**B.      Plaintiffs' Contention that the Card Agreements Were "Rescinded" Is an Issue Reserved for the Arbitrator.**

Beyond their evidentiary objections, Plaintiffs contend they "served a formal Notice of Rescission on Credit One that explicitly rescinded the credit card agreement and all documents executed in connection therewith, including the arbitration clause." (Doc. 27 at 7.) But as the Supreme Court has explained, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) (holding that an arbitrator must resolve a claim that a contract is illegal and void *ab initio*); *see also Benchmark Ins. Co. v. SUNZ Ins. Co.*, 36 F.4th 766, 772 (8th Cir. 2022) (holding assertion that contract "has been superseded by" later agreement "which rendered it void" was "a challenge to the contract's validity that, under *Buckeye*, shall be considered by an arbitrator, not a court"). As such, Plaintiffs' various assertions that they "terminated any possible contract," "rescind[ed] the credit card agreement in its entirety," and that "the entire agreement is void," (*see* Doc. 27 at 2, 3, 6), are precisely the sort of

"general attacks on the validity of the whole contract [that] are to be resolved in arbitration." [3] *See Goza v. Multi-Purpose Civic Ctr. Facilities Bd. for Pulaski Cnty.*, No. 12-CV-6125, 2014 WL 3672128, at *4 (W.D. Ark. July 23, 2014); *Curtis v. Newhard, Cook & Co., Inc.*, 725 F.Supp. 1072, 1074 (E.D. Mo. 1989) ("[C]laims attacking the entire contract rather than the arbitration clause in particular are subject to arbitration.").

Relatedly, Plaintiffs argue that the Card Agreements are "void ab initio due to material breaches of the Truth in Lending Act (TILA), failures to comply with Fair Credit Reporting Act (FCRA) requirements, and Defendants' failure to properly address billing errors and account inaccuracies." (Doc. 27 at 2.) But again, a claim that a contract is "void *ab initio*" is "a challenge to the validity of the contract as a whole and not just to the arbitration provision," that "must be brought before the arbitrator and not the court." *See France v. Flagship Credit Acceptance, LLC*, No. 4:24-CV-00814-KGB, 2025 WL 2601517, at *5 (E.D. Ark. Sept. 9, 2025); *see also*

---

[3] Relying on out-of-circuit precedent applying Florida law, Plaintiffs argue that a "[r]escinded contract leaves no arbitration clause to enforce." (Doc. 31 (citing *Reiterman v. Abid*, 26 F.4th 1226 (11th Cir. 2022)).) But *Reiterman* is not binding on this Court, and its holding is limited to where parties "*voluntarily* decide to release each other from their obligations after forming a contract, including their obligation to arbitrate certain disputes." *See Reiterman*, 26 F.4th at 1232 (emphasis added). Plaintiffs have neither alleged nor demonstrated that "the parties later agreed to rescind their earlier contract," however. *See id.* Rather, Plaintiffs describe an ostensible attempt at "unilateral self-help rescission" through "Notices of Rescission" they mailed to COB, (*see* Doc. 27 at 3), which the Eleventh Circuit has held is a "challenge [that] must be decided by an arbitrator." *See Scott v. EFN Invs., LLC*, 312 F. App'x 254, 256 (11th Cir. 2009) (compelling arbitration where plaintiff alleged "the transaction in its entirety was revoked/rescinded").

*Kubista v. Value Forward Network, LLC*, No. CIV 12-4066, 2012 WL 2974675, at *5 (D.S.D. July 20, 2012) ("The heart of Kubista's argument is that the License Agreement is void because franchise or business opportunity law prescribes it. Under *Buckeye,* this type of issue must be submitted to arbitration."). And although Plaintiffs allege that COB's alleged violations of the FCRA and FCBA are "a material breach that undermines the enforceability of the entire transaction and any provision within it," (Doc. 27 at 8), a "breach of the substantive contract is not a permitted objection to arbitrability; it is a merits question" that must be resolved in arbitration. *Sleeper Farms v. Agway, Inc.*, 506 F.3d 98, 104 (1st Cir. 2007); *see also Duncan-Williams, Inc. v. Bonds.com Grp., Inc.*, No. 2:08-CV-02848, 2009 WL 10699716, at *6 (W.D. Tenn. Sept. 18, 2009) (holding that clause required "arbitration of Plaintiff's claims for breach of that agreement, even if there exists an uncured material breached of the agreement," as "[a]n agreement to arbitrate would be of little value if a party's alleged breach of the contract were sufficient to preclude arbitration of claims that have arisen between them").

Equally unavailing is Plaintiffs' contention that "[w]here the underlying transaction is rescinded, the arbitration clause is rescinded with it," (Doc. 27 at 6), as it is well established in the Eighth Circuit that "[e]ven if the underlying credit agreement was terminated," this "does not necessarily release the parties from their obligations under that agreement, including the obligation to arbitrate." *Koch v.*

8

*Compucredit Corp.*, 543 F.3d 460, 465 (8th Cir. 2008). Rather, "there is 'a presumption in favor of postexpiration arbitration of matters unless negated expressly or by clear implication.'" *Id.* (quoting *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 204 (1991)). And there is no such express or implied negation here, given that the Arbitration Agreement provides it "shall *survive* changes in the Agreement and termination of the Account or the relationship between you and us." (*See* Doc. 22-1 at 18, 50, 84 (emphasis added).)

Even if the Court were to consider Plaintiffs' assertion that they rescinded the Card Agreements, TILA's right of rescission is limited to a "consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in a consumer's *principal dwelling*." *See* 15 U.S.C. § 1635(a) (emphasis added); *see also* 12 C.F.R. § 1026.23(a)(1). It is entirely inapplicable to credit card agreements like those at issue in this case, and Plaintiffs' argument that they exercised "a self-executing remedy under TILA" pursuant to which "the arbitration clause ceased to exist" is thus without merit.[4] (*See* Doc. 27 at 7); *see also Hurley v. Navy Fed. Credit*

---

[4] Plaintiffs also appear to argue their claims cannot be compelled to arbitration because "[t]he debt was securitized and owned by third parties during the alleged default period." (Doc. 27 at 2.) Yet Plaintiffs have only submitted a partial copy of a Community Reinvestment Act Performance Evaluation that states "[m]ore than 95 percent of [COB's] receivables are sold daily without recourse." (*Id.* at 21-22.) Even if Plaintiffs had offered proof that their Accounts were securitized, this would not affect the validity of the Arbitration Agreement or COB's ability to sell the Accounts following Plaintiffs' default. *See, e.g., Tostado v. Citibank (S. Dakota), N.A.*, No. CIV.A. SA-09-CV549XR, 2010 WL 55976, at *2-3 (W.D. Tex. Jan. 4, 2010) (the "real party in interest, Citibank, would hold the right to enforce its interests on those accounts and loans" even though it had sold its interest in the receivables through securitization); *Lane v. Vitek Real Est.*

*Union*, No. 22 C 1545, 2024 WL 4818720, at *7 (N.D. Ill. Nov. 18, 2024) (rejecting claim that defendant bank "fail[ed] to include an explanation on the right of rescission in its credit card agreements as required by 15 U.S.C. § 1635," as "[t]hat section applies to disclosures required in credit transactions involving security interest[s] in real property used as the principal dwelling of the consumer").

**C.  LVNV and Resurgent Are Entitled to Enforce the Arbitration Agreement.**

Plaintiffs next argue that LVNV (and presumably Resurgent as the servicer of the Accounts on LVNV's behalf) is not entitled to compel arbitration because "[t]he final Bill of Sale from Resurgent Acquisitions LLC to LVNV . . . states 'WITHOUT RECOURSE,'" which "conclusively demonstrates LVNV purchased only disputed debt balances" rather than the right to enforce the Arbitration Agreement. (Doc. 27 at 2.) Plaintiffs are incorrect. "'Recourse' refers only to the liability of a seller of receivables to the purchaser if the underlying obligors fail to pay the receivables. A seller disclaims this liability, known as 'credit liability,' by selling the receivables 'without recourse.'" *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 925 (10th Cir. 2004) (citation omitted); *see also* WITHOUT RECOURSE, Black's Law

---

*Indus. Grp.*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010) ("The argument that parties lose their interest in a loan when it is assigned to a trust pool has also been rejected by many district courts."); *Rivac v. Ndex W. LLC*, No. C 13-1417 PJH, 2013 WL 6662762, at *4 (N.D. Cal. Dec. 17, 2013) ("The power of sale is not nullified when a loan is securitized"); *Scott v. Bank of Am.*, No. CIV.A. 13-987, 2013 WL 6164276, at *3 (E.D. Pa. Nov. 21, 2013), *aff'd*, 580 F. App'x 56 (3d Cir. 2014) ("[S]ecuritizing receivables has no impact on the relationship between the debtor and the creditor").

Dictionary (12th ed. 2024) ("With this stipulation, one who indorses an instrument indicates that he or she has no further liability to any subsequent holder for payment."). Therefore, a "without recourse" notation is a disclaimer of any guarantee that the account debtor will pay, not an indication that an assignment somehow excludes other "contract rights or arbitration provisions." (*See* Doc. 27 at 2.) Quite the contrary, the Declaration of Account Transfer corresponding to each of Plaintiff's Accounts provides that Resurgent Acquisitions LLC "transfers, sells assigns, conveys, grants and delivers to [LVNV] *all of its right, title and interest* in and to" the Accounts and receivables, including all rights under the Arbitration Agreement.[5] (*See* Doc. 22-2 at 15, 76, 128); *see also Campbell v. Jacob*, No. 4:19-CV-179-JM, 2019 WL 4267486, at *3 (E.D. Ark. Sept. 9, 2019) (finding that assignment of "all rights, title and interest in and to" credit card accounts "included the right to arbitration").

Additionally, Plaintiffs aver they "never undertook any obligation to LVNV" and that "a stranger to such arrangements cannot claim that a consumer, such as

---

[5] Indeed, because the UCC provides that "the rights of an assignee are subject to . . . all terms of the agreement between the account debtor and assignor and any defense . . . arising from the transaction that gave rise to the contract," *see* Ark. Code Ann. § 4-9-404(a), courts have routinely held "that a transfer of accounts receivable includes the transfer of the underlying contractual terms, including arbitration provisions such as the one at issue here." *Martin v. Cavalry SPV I, LLC*, No. CIV. 13-88-GFVT, 2014 WL 1338702, at *6 (E.D. Ky. Mar. 31, 2014) (collecting cases); *see also Systran Fin. Servs. Corp. v. Giant Cement Holding, Inc.*, 252 F. Supp. 2d 500, 504 (N.D. Ohio 2003) (because a sale or transfer of accounts receivable is governed by Article 9 of the UCC, the assignee "takes an assignment subject to defenses and claims of an account debtor" including the application of an arbitration clause).

Plaintiffs [*sic*] has promised to pay it or to arbitrate it." (Doc. 27 at 4.) But this assertion is dubious: through the Arbitration Agreement, Plaintiffs agreed to arbitrate disputes with COB's "parent, subsidiaries, affiliates, successors, predecessors, employees, and related persons or entities, and all third parties who are regarded as agents or representatives of us in connection with the subject matter of the claim or dispute at issue." (Doc. 22-1 at 16, 48, 82.) Further, each Card Agreement provides that COB "may assign any or all of [its] rights and obligations," (*id.* at 18, 50, 84), and COB "did just that by assigning it rights to" LVNV, entitling "both [LVNV] and [Resurgent] as its affiliate [to] enforce the arbitration provision." *See Campbell*, 2019 WL 4267486, at *3; *see also France*, 2025 WL 2601517 (holding that assignee was entitled to enforce arbitration clause within subject contract). And as discussed in Defendants' Motion, "several courts have examined assignments nearly identical to the one here—with the only difference being the pool of accounts transferred from Credit One ultimately to LVNV—and found those assignments valid." *Simiring v. LVNV Funding, LLC*, No. 1:24-cv-20803-GAYLES, 2025 WL 876935, at *5 (S.D. Fla. Mar. 21, 2025) (collecting cases and concluding based upon virtually identical evidence that "LVNV now stands in the shoes of Credit One and may assert its right to proceed in arbitration under the Card Agreement"); *Cobb v. Resurgent Capital Services, LP, et al.*, No. 19-cv-5833, 2021 WL 321408, at *4 (N.D. Ga. Feb. 1, 2021) ("Because Credit One assigned Plaintiff's

12

Account to Defendant LVNV (albeit indirectly through a string of intermediary assignees), Defendant LVNV does in fact stand in [Credit One's] shoes as its assignee and now has all the same rights regarding [Plaintiff's] account as [Credit One] had when the Cardmember Agreement was formed."); *Mollison v. LVNV Funding, LLC*, No. 3:18-cv-01023, 2018 WL 11326704, at *5 (S.D. Cal. Dec. 14, 2018) (same); *Holland v. LVNV Funding, LLC*, No. 5:16-CV-00069, 2016 WL 6156187, at *8-10 (W.D. Ky. Oct. 21, 2016) (same).

## D.      The Arbitration Agreement Is Not Unconscionable.

### 1.      The Arbitration Agreement's prohibition of collective actions is valid and enforceable.

Finally, Plaintiffs argue that the Arbitration Agreement is unconscionable because they would be required to pay arbitration fees and to arbitrate their claims individually pursuant to the Arbitration Agreement's class action waiver. (*See generally* Doc. 31.) "Arkansas courts consider two types of unconscionability: (1) procedural unconscionability, which is absence of meaningful choice on the part of one of the parties together with contract terms that are unreasonably favorable to the other party; and (2) substantive unconscionability, which generally involves excessive price or restriction of remedies."[6] *France*, 2025 WL 2601517, at *5 (citing *LegalZoom.com, Inc. v. McIllwain*, 429 S.W.3d 261 (Ark. 2013)).

---

[6] Plaintiffs fail to address Nevada law in arguing that the Arbitration Agreement is unconscionable but, as in Arkansas, "[u]nder Nevada law, an arbitration clause is procedurally

Starting with Plaintiffs' arguments regarding the Arbitration Agreement's requirement that "[c]aims in arbitration will proceed on an INDIVIDUAL basis only," (Doc. 22-1 at 17, 49, 83), Arkansas's appellate courts and federal courts applying Arkansas law have consistently held that class action waivers are valid and enforceable. *See, e.g., Altice USA, Inc. v. Johnson*, 661 S.W.3d 707, 720 (Ark. App. 2023) ("[C]lass-action waivers are not per se unconscionable."); *Fox v. TTEC Servs. Corp.*, No. 4:19-CV-00037-KGB, 2020 WL 13882107, at \*6 (E.D. Ark. Apr. 10, 2020) (enforcing clause requiring plaintiffs "to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general basis"); *Hill-Smith v. Silver Dollar Cabaret, Inc.*, No. 5:18-CV-5145, 2018 WL 6579917, at \*2 (W.D. Ark. Dec. 13, 2018) (holding that plaintiff "has waived her right to bring a collective action on behalf of similarly situated parties" and "must proceed individually in arbitration proceedings"); *Campbell*, 2019 WL 4284106, at \*3 (compelling arbitration and striking plaintiff's class allegations pursuant to class action waiver contained in arbitration agreement). Plaintiffs fail to make any argument grounded in Arkansas law and instead rely primarily on the California Supreme Court's decision in *Discover Bank v. Superior Ct.*, 36 Cal. 4th 148, 113

---

unconscionable 'when a party lacks a meaningful opportunity to agree to the clause terms,'" whereas "substantive unconscionability focuses on the 'one-sidedness' of the contract terms." *Becker v. Keshmiri*, No. 319CV00602LRHWGC, 2020 WL 2733944, at \*4 (D. Nev. May 26, 2020) ("The plaintiff bears the burden of demonstrating that an arbitration agreement is procedurally and substantively unconscionable.") (citations omitted).

14

P.3d 1100 (2005),[7] to argue that "[c]lass arbitration waivers [are] unconscionable in consumer credit card contracts." (Doc. 31 ¶¶ 9-10.) Putting aside that California law is inapplicable to this dispute, the holding in *Discover Bank* has been expressly overruled by the United States Supreme Court and does not aid Plaintiffs. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) ("Because it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' California's *Discover Bank* rule is pre-empted by the FAA." (internal citation omitted)); *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (rejecting argument that a "ban on class arbitration is unconscionable under California law" as "expressly foreclosed by *Concepcion*").

Nor does *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054 (7th Cir. 2018), support Plaintiffs' argument. (*See* Doc. 31 ¶ 11.) In *A.D.*, the Seventh Circuit held that a minor who brought a putative class action by and through her mother—who was a signatory to a cardholder agreement with an arbitration provision—could not be compelled to arbitrate her claims because, unlike her mother, the minor "had no relationship, contractual or otherwise, with Credit One" and "derived no direct benefit from the cardholder agreement." *Id*. at 1064. As such, the Court merely "conclude[d] that the arbitration clause, including its class action waiver, [did] not

---

[7] The precise citation provided by Plaintiffs is "Discover Bank v. Superior Court (2005) 30 Cal.4th 711." (Doc. 31 ¶¶ 9-10.) There does not appear to be any case with this reporter number, however.

apply to" the minor. *Id*. at 1065 n.17. Contrary to Plaintiffs' contention, the *A.D.* Court did not hold that class action waivers are unconscionable. (*See* Doc. 31 ¶ 11.) Moreover, *A.D.* is wholly inapposite to this case, as Plaintiffs admit they entered into the Card Agreements and "assert[] a relationship with all three defendants, as evidenced by [their] referral, throughout the complaint, to 'the defendants' and the defendants' conduct." *See Sakyi v. Estee Lauder Companies, Inc*., 308 F. Supp. 3d 366, 387 (D.D.C. 2018) (explaining that *A.D.* "does not support the plaintiff's argument" because "the plaintiff has signed the arbitration agreement and a nonsignatory is attempting to enforce the agreement executed by the plaintiff" whereas "the minor [in *A.D.*] had no relationship with the defendant corporation and had not signed the arbitration agreement").

### 2.    Plaintiffs fail to show that arbitration is cost prohibitive.

As for Plaintiff's arguments regarding the costs of proceeding with arbitration, when "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000). In other words, the party must show "it is likely, as opposed to merely speculative, that the prohibitive costs will actually be incurred." *Torres v. Simpatico, Inc*., 781 F.3d 963, 969 (8th Cir. 2015) (citing *Randolph*, 531 U.S. at 92). "[A] 'hypothetical inability to pay' the costs of arbitration" is thus insufficient; the

party resisting arbitration must instead "present 'specific evidence of likely arbitrators' fees' and evidence of their own financial inability to pay those fees so that the court can determine whether the arbitral forum is accessible." *Id*. (quoting *Faber v. Menard, Inc*., 367 F.3d 1048, 1053-54 (8th Cir. 2004)). Moreover, "the fact that a party will incur litigation costs and attorney's fees in an arbitral forum does not make that forum unconscionable; she would generally face those fees regardless of forum." *E.E.O.C. v. Woodmen of World Life Ins. Soc*., 479 F.3d 561, 567 (8th Cir. 2007).

Here, Plaintiffs assert that the American Arbitration Association ("AAA") "demands $1,400 minimum" to initiate arbitration, (Doc. 31 at 1), but fail to submit any evidence of such fees, let alone "the 'specific evidence' necessary to establish that individual arbitration is cost prohibitive and thus that the arbitration provision is unconscionable." *See Torres*, 781 F.3d at 969-70 (concluding that an AAA general fee schedule, a study of average rates, and an attorney's affidavit estimating expected costs was insufficient). Indeed, Plaintiffs' contentions are belied by the AAA's current Administrative Fee Schedule for consumer arbitrations, which sets forth $225 as the filing fee for an individual claimant.[8] *See* American Arbitration

---

[8] Plaintiffs cite to *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 447 P.3d 680 (2019), to assert that the AAA's "[a]rbitration fees are unconscionable." (Doc. 31 at 2.) But again, this action is pending in Arkansas and the Arbitration Agreement contains a Nevada choice-of-law clause, rendering California law inapplicable. (*See* Doc. 22-1 at 16, 48, 82.) Regardless, courts applying California law routinely uphold provisions that require claimants to pay similar or higher arbitration fees. *See, e.g., Longboy v. Pinnacle Prop. Mgmt. Servs., LLC*, 718 F. Supp. 3d 1004, 1017 (N.D. Cal.

Association, *Administrative Fee Schedule*, https://www.adr.org/media/3uofn4lu/-consumer_rules_and_mediation_procedures_feeschedule.pdf (last accessed Feb. 25, 2026); *see also Goza*, 2014 WL 3672128, at *5 (finding that a "$250.00 [arbitration] fee is comparable to fees required to file a lawsuit" and there is "nothing inherently unconscionable about the existence of the fee or the amount").

Moreover, the Arbitration Agreement provides, "[w]e will pay any costs that are required to be paid by us under the arbitration administrator's rules of procedure." (Doc. 22-1 at 17, 50, 84.) The AAA's Consumer Arbitration Rules, in turn, provide that "[t]he arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with applicable law." *See* American Arbitration Association, *Consumer Arbitration Rules and Mediation Procedures*, Rule R-46(a), https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf (last accessed Feb. 25, 2026). Yet Plaintiffs do not present any "legal argument in [their] response brief showing that the 'applicable law' would put [them] in the position of

---

2024) (finding no unconscionability where plaintiff failed to show "that arbitration would be prohibitively expensive or that it requires that he pay different types of fees or higher fees than would be required in court"); *McKay v. JPMorgan Chase Bank, N.A.*, No. 215CV06256CBMAJWX, 2016 WL 11755601, at *8 n.12 (C.D. Cal. Mar. 8, 2016) ("Even if Plaintiffs were required to file the initial $200 arbitration filing fee, the fact that Plaintiffs paid for the $400 filing fee in this case without requesting a waiver would weigh against a finding of substantive unconscionability."); *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *17 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) (holding that filing fee of $975 under the AAA Commercial Rules to pursue a claim relating to a $95 purchase did not "'shock[ ] the conscience,' particularly relative to litigation expenses").

having to split the costs of arbitration with" Defendants, rendering their assertions all the more specious. *See Duke v. Poplar Grove Operations, LLC*, No. 4:22-CV-00056-LPR, 2022 WL 1525262, at *3 (E.D. Ark. May 13, 2022) (rejecting unconscionability argument based on potential arbitration fees where agreement provided that "the responsibility for paying those fees will be divided between the parties in accordance with applicable law"); *see also Torres*, 781 F.3d at 970 (noting that "the arbitration provision specifically grants the arbitrator 'the right to award . . . any relief which he or she deems proper,' including discretion to allocate costs and expenses between the parties").

Further, as Plaintiffs acknowledge, the AAA allows an individual claimant to seek a waiver of its administrative fees. *See* American Arbitration Association, *Affidavit in Support of Administrative Fees Hardship Waiver – Individual*, https://www.adr.org/media/4fslwld1/2025_support_of_hardship_waiver_of_fees_individual.pdf (last accessed Feb. 26, 2026). Although Plaintiffs aver that they would be required to submit "invasive financial proofs" to obtain such a waiver, (Doc. 31 ¶ 8), they fail to specify what this "invasive" information[9] may be, and merely punctuate their failure to offer any proof of their "financial ability to pay those fees

---

[9] In fact, the AAA's fee-waiver affidavit requests essentially the same information regarding the filer's financial situation as the fee-waiver application form approved by the Judicial Conference of the United States. *See* Official Form AO 240, Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form).

so that the [C]ourt can determine whether the arbitral forum is accessible."[10] *See Faber*, 367 F.3d at 1054. Simply put, Plaintiffs have presented only "unsupported assertion[s] of 'high' costs and [their] inability to pay them," which "cannot support a legal conclusion of unconscionability." *See Cicle v. Chase Bank USA*, 583 F.3d 549, 557 (8th Cir. 2009) (citation omitted).

### III. <u>CONCLUSION</u>

For the foregoing reasons, and the reasons set forth in Defendants' Motion to Compel Arbitration and to Stay, Defendants respectfully request that the Court compel Plaintiffs' claims to individual arbitration and stay these proceedings pending the outcome of arbitration.

Respectfully submitted this 27th day of February, 2026.

---

[10] Plaintiffs also make much of Plaintiff Manzano's purported need to "drive[] 1.5 hours on DANGEROUS winding two-lane country roads in [a] BORROWED vehicle to file pleadings" in this action. (*See* Doc. 31 ¶¶ 3, 8, 13.) While this is irrelevant to the propriety of Defendants' Motion (given that this burden would exist if proceedings were to continue in this Court), Defendants note that under the AAA's Consumer Arbitration Rules, arbitration proceedings are "held virtually or by other means as approved by the arbitrator unless otherwise agreed to by the parties." *See* American Arbitration Association, *Consumer Arbitration Rules and Mediation Procedures*, Rule R-22. Additionally, "[d]isputes may be resolved by submission of documents and without an oral evidentiary hearing process involving virtual, in-person, or telephonic hearings," ameliorating any concerns about travel-related hardship. *Id.*, Rule R-36.

/s/ Samuel A. Morris
Samuel A. Morris, Esq. (AR No. 2021089)
BURR & FORMAN LLP
222 Second Avenue South, Suite 2000
Nashville, TN 37201
Telephone:  (615) 724-3258
Facsimile:  (615) 724-3358
Email: smorris@burr.com

Attorney for Defendants
CREDIT ONE BANK, N.A., LVNV
FUNDING LLC, AND RESURGENT CAPITAL
SERVICES L.P.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been electronically filed with the Clerk of the Court using CM/ECF and has been served on the following by U.S. First Class Mail on the 27th day of February, 2026:

Jacqueline Manzano
Alton Grisham
Pete Torrez
401 Paradise Heights Drive
Berryville, AR 72616
*Pro se Plaintiffs*

/s/ Samuel A. Morris

65853407 v1
21