## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF ARKANSAS
### HARRISON DIVISION

JACQUELINE MANZANO;
ALTON GRISHAM; and
PETE TORREZ                                                              PLAINTIFFS

v.                              CASE NO. 3:25-CV-3072

CREDIT ONE BANK, N.A.;
RESURGENT CAPITAL
SERVICES, LP; and
LVNV FUNDING, LLC                                                        DEFENDANTS

### OPINION AND ORDER

Before the Court is a Motion to Compel Arbitration and to Stay (Doc. 21) by Defendants Credit One Bank, N.A., Resurgent Capital Services L.P., and LVNV Funding, LLC.  In considering this Motion, the Court has reviewed the following: Defendants' Brief in Support (Doc. 22); Plaintiffs' Response in Opposition (Doc. 27); Plaintiffs' Affidavits in Support of the Response (Docs. 28, 29, 30); Plaintiffs' Supplemental Opposition (Doc. 31); Plaintiffs' Post Hearing Supplemental Opposition (Doc. 38); Plaintiffs' Notice of Preservation of Objections and Reservation of Rights (Doc. 47); and Defendants' Reply (Doc. 48).  The Court also received oral argument at the Case Management Hearing (Doc. 37) and Motion Hearing (Doc. 45).  For the reasons stated from the bench and outlined below, this Motion is **GRANTED**.  To the extent this Order conflicts with the Court's oral ruling, this Order controls.

1

## I.    BACKGROUND

This case concerns consumer debts associated with credit card accounts obtained by Plaintiffs Jacqueline Manzano, Alton Grisham, and Pete Torrez through Credit One Bank.  Plaintiffs, proceeding *pro se*, opened individual credit accounts with Credit One by completing online applications.  Once approved, Credit One mailed a letter containing the physical credit card and a copy of the Card Agreement to each Plaintiff.  (Doc. 22-1, pp. 11-21 (Manzano), 43-52 (Grisham), and 77-87 (Torrez)).  Manzano's account, ending in 2393, was opened on February 18, 2024, and her credit card was activated on February 26, 2024.  Torrez's account, ending in 0181, was opened on March 12, 2024, and his credit card was activated on March 20, 2024.  Grisham's account, ending in 7755, was opened on March 26, 2024, and his credit card was activated on May 1, 2024.  Plaintiffs made purchases using their credit cards and applied payments to their accounts throughout 2024.  However, each Plaintiff eventually failed to make the required payments, and all three accounts were charged-off by July 2025.

LVNV is the current owner of Plaintiffs' credit card accounts, and Resurgent is the servicer and authorized agent for LVNV that manages Plaintiffs' accounts. LVNV purchased the accounts along with all rights, titles, and interests of each, as part of several portfolios of charged-off debts.  LVNV did not purchase Plaintiffs' accounts directly from Credit One.  Rather, the accounts went through a chain of

sales and assignments among different limited liability companies before LVNV's current ownership.  (Doc. 22-2, pp. 4–13).  Under the Card Agreements, Credit One had the express authority to "assign any or all of [their] rights and obligations under this Agreement." (Doc. 22-1, pp. 18, 50, 84).

The Card Agreements governing Plaintiffs' credit card accounts contained identical arbitration provisions (Arbitration Agreement) requiring Plaintiffs to arbitrate all claims relating to their credit card accounts.  A notice of the Arbitration Agreement was listed on the second page of the Card Agreements, which stated: "This Agreement includes an Arbitration Provision with class action and jury trial waivers.  You can reject the Arbitration Provision.  See 'How to REJECT this agreement to arbitrate' in the Arbitration Section.  If you do not, it will be part of this Agreement." (*Id.* at 12, 44, 78).

The Arbitration Agreement, starting on page six of Plaintiffs' Card Agreements, begins with the following heading in capitalized and bolded font: "PLEASE READ CAREFULLY—IMPORTANT—AFFECTS YOUR LEGAL RIGHTS." (*Id.* at 16, 48, 82).  The Arbitration Agreement "require[d] that controversies or disputes" pertaining to Plaintiffs' credit card accounts "be submitted to mandatory, binding arbitration" and that "the agreement to arbitrate . . . shall be governed by, and enforceable under the Federal Arbitration Act . . . and (to the extent

3

State law is applicable), the law of the State of Nevada." (*Id.*).  The Arbitration Agreement provides, in part:

> **Covered Claims:** Claims subject to arbitration include, but are not limited to, any controversies or disputes arising from or relating in any way to your Account; any transactions involving your Account; any disclosures made to you concerning your Account; any interest, charges or fees assessed on your Account; any service(s) or programs related to your Account; and, if permitted by the rules of the arbitration forum, any collection of debt related to your Account.  Claims also include controversies or disputes arising from or relating in any way to advertising, solicitations, or any application for, approval of, or establishment of your Account.  Claims subject to arbitration include any controversies of disputes based on any theory of law, whether contract, tort, statute, regulation, common law, or equity, or whether they seek legal or equitable remedies.  All Claims are subject to arbitration whether they arose in the past, may currently exist, or may arise in the future.  Arbitration will apply even if your Account is closed, you pay us in full any outstanding debt you owe, or you file for bankruptcy.  Also, controversies or disputes about the validity, enforceability, coverage, meaning, or scope of this agreement to arbitrate or any part thereof are subject to arbitration and are for the arbitrator to decide.  Any questions about what Claims are subject to arbitration shall be resolved by interpreting this agreement to arbitrate in the broadest way the law will allow it to be enforced.
>
> .   .   .
>
> **No Class Arbitration or Consolidation or Joinder of Parties:** Class actions and other similar procedures in which individuals seek to represent similarly situated individuals or seek relief on behalf of the general public, and consolidation or joinder of Claims (except for claimants on the same account), are NOT available under this agreement to arbitrate. Claims in arbitration will proceed on an INDIVIDUAL basis only:
>
>> UNLESS YOU REJECT THIS AGREEMENT TO ARBITRATE, YOU AND WE WAIVE THE RIGHT TO ASSERT OR PARTICIPARE IN A CLASS ACTION OR ANY

REPRESENTATIVE OR CONSOLIDATED PROCEEDING IN COURT OR IN ARBITRATION.

.    .    .

**Fees and Costs:** We will pay any costs that are required to be paid by us under the arbitration administrator's rules of procedure. If you file the arbitration, you will pay your share of the initial filing fee, unless you seek and qualify for a fee waiver under the applicable rules of the arbitration administrator. The party filing an appeal shall be responsible for all filing fees and costs of the appeal unless prohibited by administrator's rules of procedure. All parties are responsible for their own attorney's fees, expert fees and any other expenses, unless the arbitrator awards such fees or expenses to you or us if allowed by applicable law.

(Doc. 22-1, pp. 16–18, 48–50, 82–84). The Arbitration Agreement included claims against "Credit One Bank, N.A., all of its parents, subsidiaries, affiliates, successors, predecessors, employees, and related persons or entities, and all third parties who are regarded as agents or representatives of us in connection with the subject matter of the claim or dispute." *Id.* at 16, 48, 82.

The Arbitration Agreement contains a survival clause, which states that the "agreement to arbitrate shall survive changes in the [Card] Agreement and termination of the Account or the relationship between you and us, including the bankruptcy of any party and any transfer or sale of your Account, or amounts owed on your Account, to another person or entity," and a severability clause, which states that "[i]f any part or parts of your agreement to arbitrate are declared unenforceable, then such specific part or parts shall be of no force or effect and shall be severed, but

5

the remainder of this agreement to arbitrate shall continue in full force and effect."

(*Id.* at 18, 50, 84).  Arbitration under the agreement would be "administered by the

American Arbitration Association (AAA) before a single arbitrator under the AAA's

Consumer Arbitration Rules." (*Id.* at 17, 49, 83).

Plaintiffs filed their Complaint in this Court on October 21, 2025, asserting

violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et

seq.; the Truth in Lending Act (TILA), 15 U.S.C. § 1601, et seq.; the Fair Credit

Reporting Act (FCRA), 15 U.S.C. § 1681, et seq.; the Gramm Leach Bliley Act

(GLBA), 15 U.S.C. § 6801, et seq.; and the Equal Credit Opportunity Act (ECOA),

15 U.S.C. § 1691, et seq.  (Doc. 2).  Defendants filed the instant Motion, arguing

that Plaintiffs' claims are subject to binding, valid arbitration agreements and that

this action should be stayed pending the outcome of arbitration.  (Doc. 21).

The Court received oral argument at both the Case Management Hearing

(Doc. 37) and Motion Hearing (Doc. 45).  The Court **GRANTED** the motion from

the bench at the conclusion of the latter.  Below is a more fulsome explanation of

the Court's ruling.

## II.    LAW

The Court evaluates Defendants' Motion under Federal Rule of Civil

Procedure 56, as both parties submitted exhibits and affidavits in support of their

respective positions, which the Court has considered.  *See Duncan v. Int'l Markets*

*Live, Inc.*, 20 F.4th 400, 403 (8th Cir. 2021) ("When parties submit affidavits in conjunction with a motion to compel arbitration, the district court treats the motion akin to a motion for summary judgment, viewing the record in the light most favorable to the nonmovant.").

Under Rule 56, summary judgment is appropriate if the record indicates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Nat'l Bank of Com. of El Dorado v. Dow Chem. Co.*, 165 F.3d 602, 606 (8th Cir. 1999) (quoting Fed. R. Civ. P. 56). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).

## III.   DISCUSSION

The sole question before the Court is whether the parties' dispute should be sent to arbitration. The Federal Arbitration Act (FAA) provides that written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This text reflects the overarching principle that arbitration is a matter of contract," and, as such, "courts must rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).

7

"If the parties have a valid arbitration agreement that encompasses the dispute, a motion to compel arbitration must be granted." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 784 (8th Cir. 2016).  Accordingly, when evaluating a motion to compel arbitration under the FAA, the court's role is "limited to determining (1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether the agreement encompasses the dispute." *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004).  Because arbitration is a matter of contract, an agreement's validity depends on state contract law.  *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

Plaintiffs do not dispute entering into the Card Agreements or the included Arbitration Agreement.  (Doc. 27, p. 3).  However, Plaintiffs maintain that they are not bound to arbitrate because: (1) the Arbitration Agreement is unconscionable; (2); Defendants waived their right to arbitrate; (3) LVNV and Resurgent lack the right to enforce arbitration because that right was not assigned to LVNV; and (4) the Card Agreements are no longer enforceable.  The Court considers each in turn.

### 1.  Unconscionability

The Court finds no evidence to support Plaintiffs' arguments that the fee structure, individualized arbitration requirement, and their inability to notice or comprehend the Arbitration Agreement render it unconscionable. Unconscionability is an exception to the general rule that a written agreement duly

executed by the party to be bound will be enforced according to its terms. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (citation modified). Arbitration agreements "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* at 68 (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Both Arkansas and Nevada law require a party to prove both procedural and substantive unconscionability. *See Hanjy v. Arvest Bank*, 94 F. Supp. 3d 1012, 1032 (E.D. Ark. 2015); *U.S. Home Corporation v. Michael Ballesteros Tr.*, 415 P.3d 32, 40 (Nev. 2018).

### A. Procedural Unconscionability

As to procedural unconscionability, Plaintiffs argue that the Arbitration Agreement was buried within the Card Agreements, rendering them unaware of it when they accepted the Card Agreements with Credit One. The Court is unpersuaded.

In Arkansas, the burden of proving unconscionability is upon the party asserting the defense. *Poff v. Brown*, 288 S.W.3d 620, 622 (Ark. 2008). When "assessing whether a particular contract or provision is unconscionable, the courts should view the totality of the circumstances surrounding the negotiation and execution of the contract," *Ark. Nat'l Life Ins. Co. v. Durbin*, 623 S.W.2d 548, 551 (Ark. Ct. App. 1981). Arkansas courts define procedural unconscionability as that which "encompasses contracts where there is an absence of meaningful choice on

9

the part of one of the parties together with contract terms that are unreasonably favorable to the other party." *GGNSC Holdings, LLC v. Lamb By & Through Williams*, 487 S.W.3d 348, 357 (Ark. 2016).

Similarly, under Nevada law, "a contract clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *Tough Turtle Turf, LLC v. Scott*, 537 P.3d 883, 885–86 (Nev. 2023) (citation modified).

Here, the second page of the Card Agreements contains a notice of the arbitration clause, class action waiver, and right to reject arbitration. It directs the reader to the appropriate section of the Card Agreement. The Arbitration Agreement and class action waiver were introduced by a boldfaced and underlined heading followed by a disclaimer in all-uppercase, bolded font explaining that the following section impacts the cardmember's litigation rights. (Doc. 22-1, pp. 16, 48, 82). The following two paragraphs include several capitalized phrases emphasizing specific litigation rights that will be waived if the Arbitration Agreement is not rejected. Credit One did not attempt to "bury" or hide the Arbitration Agreement or trap an unwary consumer into unfavorable terms.

10

Credit One provided a meaningful choice to Plaintiffs regarding arbitration. Plaintiffs could have rejected the Arbitration Agreement by sending written notices of rejection within 45 days after receiving the Card Agreement.  They did not.  All three Plaintiffs had the opportunity to opt out of the Arbitration Agreement while maintaining a credit card account with Credit One.  Although Plaintiffs claim to be unaware of the arbitration provision, they do not argue that the Card Agreements were never received or suggest that they took any action to reject the Card Agreements.  Instead, they used the credit cards sent in the same letter as the Card Agreements, and, by doing so, under the terms of the agreement, affirmatively accepted the Card Agreements, including the Arbitration Agreement.  Therefore, the Court finds that the Arbitration Agreement at issue here is not so procedurally unconscionable as to render it unenforceable.

### B. Substantive Unconscionability

The Court has also considered substantive unconscionability under Arkansas and Nevada law.  In Arkansas, substantive unconscionability is that which "generally involves excessive price or restriction of remedies." *Poff v. Brown*, 288 S.W.3d 620, 622 (Ark. 2008).  In Nevada, "[s]ubstantive unconscionability concerns the contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining

process or otherwise contravene the public interest or public policy." *Tough Turtle Turf, LLC*, 537 P.3d at 885–86.

Plaintiffs "bear the burden of showing that individual arbitration would be prohibitively expensive, and that it is likely, as opposed to merely speculative, that the prohibitive costs will actually be incurred." *Torres*, 781 F.3d at 969 (citing *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 92 (2000)). Plaintiffs "must establish more than a 'hypothetical inability to pay' the costs of arbitration" in order to "overcome the federal policy favoring arbitration." *Id.* (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1053 (8th Cir. 2004)). They must provide "the evidence necessary to estimate the length of the arbitration and the corresponding amount of arbitrators' fees (e.g. sophistication of the issues, average daily or hourly arbitrator costs in the region)" for their individual arbitration proceedings. *See Cicle v. Chase Bank USA*, 583 F.3d 549, 557 (8th Cir. 2009) (quoting *Faber*, 367 F.3d at 1054). They "must present 'specific evidence of likely arbitrator's fees' and evidence of their own financial inability to pay those fees so that the court can determine whether the arbitral forum is accessible." *Torres*, 781 F.3d at 969 (quoting *Faber*, 367 F.3d at 1054).

"If this burden is not met, 'the district court must honor the arbitration agreement and compel arbitration.'" *Id.* (quoting *Faber*, 367 F.3d at 1054). Because "arbitration is a matter of contract, the court must rigorously enforce arbitration

12

agreements according to their terms," *Italian Colors Rest.*, 570 U.S. at 233 (citation modified), including requirements to pursue claims through individual arbitration. *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 506 (2018).

Here, Plaintiffs contend that the Arbitration Agreement forecloses their ability to proceed together and that the prohibitively high costs associated with an individual arbitration proceeding prevent them from pursuing their claims. The Court finds these assertions unsupported by the evidence. While Plaintiffs insist that the "AAA demands $1,400 minimum," which they "lack entirely" given their "strained wages [] consumed by living expenses," they do not provide evidence as to the length of arbitration and corresponding daily or hourly arbitrator costs in their case. (Doc. 31, pp.1-2). At the Motion Hearing, when pressed on this issue, Manzano stated, "[T]here's a lot of stuff around – online that says, oh, $200, $250, but I can't accept that . . . [s]o I don't know." (Mot. Hr'g Tr., p. 13).

Moreover, beyond an assertion of strained wages, there has been no argument regarding Plaintiffs' inability to pay fees. The Court notes that Plaintiffs did not file a Motion for Leave to Proceed *in forma pauperis* in this case and that the filing fee for Plaintiffs' Complaint was paid in the amount of $405. Thus, while Plaintiffs raise this question about the arbitrator's fees, they do not submit any evidence about how much it would cost and whether they would be required to bear those fees.

13

The Court is informed by an Eastern District of Arkansas case from 2022 written by The Honorable Judge Lee P. Rudofsky in which the parties argued unconscionability based on the cost of arbitration. *See Duke v. Poplar Grove Operations, LLC*, Case No. 4:22-CV-00056-LPR, 2022 WL 1525262, at *1-*5 (E.D. Ark. May 13, 2022). Judge Rudofsky wrote, "The Supreme Court has instructed that when 'a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.'" *Id*. at *3. Duke argued that his share of the cost of arbitration was unconscionable. *Id.* Judge Rudofsky noted that the Eighth Circuit required Duke to show that it was likely, not merely speculative, that prohibitive costs would be incurred. *Id.* Having provided no such evidence, the arbitration agreement was enforceable against Duke. *Id.*

The Court finds Plaintiffs' unconscionability argument very similar in this case. There has simply been no evidence about the cost of arbitration or that Plaintiffs would be unable to bear that cost. Strained wages alone do not constitute the specific evidence necessary to establish that individual arbitration is cost prohibitive and, thus, that the arbitration provision is unconscionable. While the Arbitration Agreement demands both parties bear their own costs, the arbitrator may shift costs and fees to award equitable relief. Moreover, Plaintiffs may seek a fee

14

waiver for the initial filing fee under the applicable rules of the arbitration administrator.

The limited information Plaintiffs have produced regarding costs and an inability to pay does not carry their evidentiary burden of proving that the expenses involved in an individual arbitration would be so high as to render access to an arbitral forum impractical. Therefore, Plaintiffs have not met their burden to support a legal conclusion of unconscionability. Accordingly, the Court finds that the Arbitration Agreement is valid under both Arkansas and Nevada contract law.

## 2. Waiver of the Right to Arbitrate

The question of waiver falls within the arbitrator's jurisdiction, not the Court's. Federal courts distinguish between procedural and substantive challenges to arbitrators' authority to resolve disputes. *Int'l Bhd. of Elec. Workers, Loc. Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1084, 1098 (8th Cir. 2004) (citations omitted); *see Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). "[J]urisdictional challenges of a procedural nature are generally appropriate for submission to the arbitrators themselves." *Hope Elec. Corp.*, 380 F.3d at 1098. Waiver is an issue of procedural arbitrability. *Howsam*, 537 U.S. at 83–85 (citations omitted).

Plaintiffs argue that because Defendants did not raise arbitration as a defense in their Answer and engaged in a Rule 26(f) conference, they waived their right to

arbitrate under the Agreement.  Waiver is for the arbitrator to decide unless the parties have clearly and unmistakably provided otherwise.  *Pro Tech Indus., Inc.*, 377 F.3d at 871–72 (citing *Howsam*, 537 U.S. at 83–85 and collecting Eighth Circuit cases).  Absent such a provision, courts must "refuse to address issues of procedural arbitrability even in the context of a motion to compel, and, instead, defer to the authority of the arbitrators to decide such issues." *Hope Elec. Corp.*, 380 F.3d at 1099.  The Court finds no such provision in the Arbitration Agreement and, thus, defers to the authority of the arbitrators to decide this procedural issue.

### 3.  Right to Enforce Arbitration

Finally, Plaintiffs argue that LVNV and Resurgent are nonsignatory parties to the Card Agreements and therefore may not compel arbitration in accordance with the Arbitration Agreement.  "Whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability." *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014). "[T]hreshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator." *Id.* (citing *Howsam*, 537 U.S. at 83).  But if a court determines that "a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the

16

arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019).

"Arbitration clauses covering claims 'arising out of' or 'relating to' an agreement are broad." *Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017) (cleaned up). Arbitration clauses covering claims that "not only arise from . . . but also those 'relating to' [a] contract . . . constitutes the broadest language the parties could reasonably use to subject their dispute to that form of settlement, including collateral disputes that relate to the agreement containing the clause." *Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997).

The Eighth Circuit has held "the incorporation of the AAA Rules into a contract requiring arbitration to be a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability." *Eckert/Wordell*, 756 F.3d 1098, 1100 (8th Cir. 2014) (finding that the question of whether a nonsignatory entity could compel arbitration against a signatory to an arbitration agreement was properly delegated to the arbitrator when an original party to the arbitration agreement transferred title to the nonsignatory); *cf. Schlacks v. Chheda*, 174 F.4th 1061, 1067–68 (8th Cir. 2026) (finding the opposite where the nonsignatory did not "assume the legal rights and obligations of an original party to the arbitration agreement").

17

Here, the Card Agreements include a broad arbitration clause.  They require Plaintiffs to arbitrate "any controversies or disputes arising from or relating in any way to [their credit card accounts]," including "controversies or disputes about the validity, enforceability, coverage, meaning, or scope of this agreement to arbitrate or any part thereof." (Doc. 16, pp. 48–49, 82–83).  Additionally, the Arbitration Agreement incorporated the AAA's Consumer Arbitration Rules.  Thus, the question of whether LVNV, the current owner of the credit accounts, and Resurgent, the servicer of the accounts and authorized agent of LVNV, can compel Plaintiffs' claims to arbitration is reserved for the arbitrator.

### 4. Card Agreements

The validity and enforceability of the Card Agreements is for the arbitrator, not the Court, to decide.  "Challenges to the validity of an agreement to arbitrate are distinct from challenges to the entire contract." *Benchmark Ins. v. SUNZ Ins.*, 36 F.4th 766, 772 (8th Cir. 2022) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)).  "The Supreme Court has made clear that 'unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.'" *Id.*

The Court finds instructive an unreported case from the El Dorado division of this district from 2019, in which the facts and issues bear a strong resemblance to those in this case. *See Smelser v. Discover Bank*, Case No. 1:19-CV-1025, 2019 WL

5618083, at *1-*5 (W.D. Ark. Oct. 31, 2019).  The Honorable Judge Susan O. Hickey wrote, "In addressing motions to compel arbitration, courts generally ask 1) whether there is a valid arbitration agreement; and (2) whether the particular dispute falls within the terms of that agreement." *Smelser*, 2019 WL 5618083 at *1 (citing *EEOC v. Woodmen of the World Life Insurance*, 479 F.3d 561, 565 (8th Cir. 2007)). "These two determinations are guided by a 'liberal federal policy favoring arbitration agreements.'" *Id*. at *1 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)).

Plaintiffs do not dispute entering into the Card Agreements or the included Arbitration Agreement.  (Doc. 27, p. 3).  At the Motion hearing, the Court asked whether the parties signed or otherwise agreed to the card agreement itself that contained the arbitration provision.  Manzano, as spokesperson for Plaintiffs, said, "Yes."  (Mot. Hr'g Tr., p. 11).  Thus, the Court does not consider the validity and enforceability of the Card Agreements in this case.

## IV.    CONCLUSION

After careful consideration, the Court finds a valid agreement to arbitrate that encompasses the parties' dispute in this case.  **IT IS THEREFORE ORDERED** that the Motion to Compel Arbitration (Doc. 21) is **GRANTED**, and the parties are **ORDERED** to arbitrate, per their agreement.  The case is **STAYED**, and the Clerk of Court is **DIRECTED** to **ADMINISTRATIVELY TERMINATE** it.  The parties may move to reopen the case if further action of the Court is required after arbitration is complete.

**IT IS SO ORDERED** on this 16th day of July 2026.



*/s / David Clay Fowlkes*

DAVID CLAY FOWLKES
UNITED STATES DISTRICT JUDGE